# CHARLESTON.

POLING, TRUSTEE, v. CONDON-LANE BOOM & LUMBER CO.

Submitted September 10, 1903—Decided April 1, 1904.

1. CONTRACT—*Assignment of*
    A contract in which the *delectus personae* is material, as where a person agrees to use his personal skill and knowledge or has been contracted with by reason of the trust and confidence placed in him, cannot be assigned by such person, while the agreement remains executory, without the consent of the other contracting party; but a contract in which the *delectus personae* is not material, and which is for services that may be as well performed by one person as another, is assignable, unless the assignment thereof be prohibited by the terms of the contract. *Held*: The contract in this case is assignable. (p 537.)

2. CONTRACT—*Limitation.*
    If a contract, other than a money demand, specifies no time within which performance is to take place, the promissor is al-

lowed such time for performance as is reasonable, taking into consideration the subject matter of the contract. (p. 539.)

3. CIRCUIT COURT—*Decree—Commissioner.*
   A decree of the circuit court, confirming the report of its commissioner, will not be disturbed on appeal, unless plainly wrong. 36 W. Va. 649. (p. 545.)

4. SYLLABUS APPROVED.
   Point 4 in Syllabus of *Bank* v. *Prager & Son,* 50 W. Va. 660, approved and applied. (p. 545.)

Appeal from Circuit Court, Tucker County.

Bill by J. E. Poling, trustee, against the Condon-Lane Boom and Lumber Company and others. Decree for plaintiff and the above named defendant appeals.

*Affirmed.*

C. W. DAILY, for appellant.

F. M. REYNOLDS and J. P. SCOTT, for appellee.

MILLER, JUDGE:

The appellant, Condon-Lane Boom and Lumber Company, and defendant, George Pyle, made a contract for the sale and delivery of saw logs, contained in the following letters: "Bretz, W. Va., July 20, 1892. Mr. George Pyle, Hendricks, W. Va. Dear Sir:—We will buy your logs on Laurel Fork of the Cheat River, to be put in Laurel Fork not more than fifteen miles from its mouth, and to be driven into the Dry Fork of the Cheat River. We to furnish a scaler, who will be satisfactory to both parties; you to pay 50 cts. per day and board the scaler, and we to pay the balance of his salary. We will advance you One Dollar ($1.00) per M ft. when the logs are scaled and branded, balance when they are driven into the Dry Fork. If you put in a good splash dam to insure the logs coming to Dry Fork, we will advance one dollar additional when put in Laurel Fork. We will pay the balance when the timber is in the Dry Fork at or below the Laurel Fork. All logs to be scaled by Doyle's Rule and to be straight and sound scale. * * * * These prices to hold good for one year from date, and is subject to your acceptance agreeing to sell all timber you cut during the next twelve months, at the foregoing prices; otherwise we are not bound by this letter." To which Pyle replied: "Hulings, W.

Va., July 27, 1892. Condon-Lane Boom and Lumber Co., Bretz, W. Va. Gentlemen:—I accept your proposition as conveyed in your letter of the 20th inst., with these provisos:—that you are not to buy any logs on Laurel Fork, except those engaged by Mr. S. R. Blackman, for the period of one year from date; and I further agree not to cut any 'Pulp' wood for the period of one year from date." To this letter, appellant made answer: "Bretz, W. Va., July 27, 1892. Mr. Geo. Pyle, Hulings, W. Va. Dear Sir:—Your favor of even date received, and in reply we agree not to buy any timber for one year on Laurel Fork, except what has been engaged by Mr. S. R. Blackman, with the understanding that you cut no 'Pulp' wood during the same time." These letters constitute a binding contract between said parties. On the 17th day of October, 1893, said Pyle made a general assignment by deed of trust, bearing date on that day, properly acknowledged, and duly admitted to record in Tucker county, by which he granted, sold, released, assigned, transferred and set over to J. E. Poling, trustee, his lands, goods and chattels and choses in action of every name, nature and description * * * more particularly enumerated and described in the schedule annexed thereto, marked No. 9: to have and to hold the same unto the said Poling, in trust, nevertheless to sell and dispose of the said personal estate, to collect the said choses in action, and dispose of the proceeds of said contract and property in the manner following, to-wit:—"First to pay all such debts as by the laws of West Virginia, as are entitled to preference in such cases. Second to pay and discharge all the reasonable expenses cost and charges of putting in the logs cut on the Eugene Hedrick lands and for driving the same and all other logs out of Laurel Fork, by reason of the contract, between said party of the first part, and the Condon-Lane Boom and Lumber Co. and all reasonable expenses in complying with said contract that is to say put in timber cut, and driving same as required by said contract, and all cost of carrying into effect the trust hereby created including the lawful commissions, of the party of the second part, for his services in executing the said trust. Third to distribute and pay the remainder of said proceeds to the creditors of the said party of the first part, for all debts and liabilities, which he may owe, or for which he may lawfully be held responsible to any person whomsoever, provided

that should the proceeds arising from the sale of his 'assets' or by reason of said contract not being sufficient to pay all his indebtedness then said debts are to be paid ratably and in proportion." The schedule referred to above is in the words and figures following: "One team horses and harness complete, all camp equipments on Laurel Fork, in Randolph Co. consisting of bedding, cant hooks, saws, axes and 'evry' thing belonging to me at said camp or in said county, all money due said Geo. Pyle, from the Condon-Lane Boom and Lumber Co. by virtue of a contract between him and said Co. all that is now due and to become due by virtue of said contract and all other property not included."

At the October Rules, 1899, said J. E. Poling, trustee, filed his bill in the clerk's office of the circuit court of Tucker county against appellant, Condon-Lane Boom and Lumber Company, George Pyle, The Hendricks Company (Limited) and L. W. James. He alleges therein the making of said contract by and between appellant company and Pyle, for the sale and delivery of saw logs; the execution of said assignment; that said Pyle had completed, or nearly completed, the said contract between himself and the said Condon-Lane Boom & Lumber Company, at the date of said assignment; and that, after the said assignment was made, Poling, as trustee in said assignment, went on and completed the contract, in every respect—as he had a right to do under said assignment, so that the full amount of plaintiff's claim, which he alleges to be eight thousand, one hundred and eleven dollars and twenty-eight cents, was due and owing to him as assignee of Pyle, from said last mentioned company. The bill further alleges that, in May, 1895, plaintiff had instituted a chancery suit in said court against said Pyle, the Condon-Lane Boom and Lumber Company, L. W. James, The Hendricks Company (Limited) and others, naming them, that the object of which suit was to have audited and adjudicated, the claims against said Pyle, secured by said deed of trust; to have the instruction of the court to the trustee as to the disbursement of the funds in his hands as trustee under said deed of assignment; and to fix and adjudicate the rights of all the parties in interest; that the said last mentioned cause was referred to a commissioner to convene the creditors of Pyle; to ascertain the assets conveyed by said deed of trust to the trus-

tee therein, and for other purposes; and that the commissioner reported, among other things, that said Boom and Lumber Company was due on its said contract with Pyle, the sum of eight thousand, one hundred and eleven dollars and twent-eight cents; but it is shown by a copy of the summons and of the return of the attempted service thereof on appellant that no valid service was had upon, and it is agreed that no appearance of any kind was made by it in said last mentioned cause. Therefore the proceedings therein are void and of no binding effect upon appellant. Plaintiff Poling also alleges that, at the February Rules, 1896, an action at law was instituted in said circuit court by him as trustee against said Boom and Lumber Company for the recovery of ten thousand, two hundred and forty-eight dollars and eleven cents, as the amount due from it upon the said logging contract, made by it with Pyle as aforesaid, which action is still pending; that said defendant, L. W. James, sometime in 1896, instituted a suit in chancery in said court against the said Boom and Lumber Company, The Hendricks Company (Limited), J. E. Poling, trustee, and George Pyle, setting up a claim to thirty-five hundred dollars of the money, due from said Boom and Lumber Company to Pyle under said logging contract, by virtue of an order for thirty-five hundred dollars, drawn by Pyle and said Boom and Lumber Company in favor of James, dated March 20, 1893, which has not been paid; that said James, in his said bill, admitted his indebtedness to the said Hendricks Company to the amount of four hundred and twenty-five dollars with proper interest thereon; and, that to secure said four hundred and twenty-five dollars, he, James, had assigned to said Hendricks Company, the said thirty-five hundred dollar order, as collateral security; that said order was then in the possession of said Hendricks Company, and that said last mentioned cause is still pending. Plaintiff charges that said Boom and Lumber Company is liable to him as trustee, for the sum of eight thousand, one hundred and eleven dollars and twenty-eight cents, with interest from the first day of January, 1894, and he submits to the court for its adjudication, the several questions arising in this cause as to the disposition of the fund to be paid to the plaintiff as such trustee, when recovered from said Boom and Lumber Company; and as to the respective rights of said Hen-

dricks Company and L. W. James in the said order, given to James by Pyle as aforesaid. Plaintiff prays the court to enter a decree in the cause requiring said Boom and Lumber Company to pay to him as trustee, said sum of eight thousand, one hundred and eleven dollars and twenty-eight cents, with interest as aforesaid, as the balance due from it on said logging contract made by it with Pyle as aforesaid; that the rights of said several parties as to the thirty-five hundred dollar order be ascertained and determined; and for general relief.

The defendant Boom and Lumber Company tendered its demurrer, and also filed its answer to said bill. The demurrer says that the bill is insufficient, 1st. Because it shows no liability for any sum of money on the part of this defendant to the plaintiff. 2nd. Because the assignment executed by the defendant, George Pyle, to the plaintiff does not purport to assign any sum of money which might have been due from this defendant to the said George Pyle at the time of the execution of said assignment. 3rd. Because the plaintiff's bill is based upon the carrying out by the plaintiff, of the contract set up in the bill, between this defendant and George Pyle, while the said Pyle's assignment does not perport to confer such power upon the plaintiff, and could not have conferred such power, even had it purported to do so.

On the 30th day of August, 1901, the cause was heard by the court upon the papers theretofore read, former orders and decrees upon the demurrer of the defendant, said Boom and Lumber Company, upon its amended answer and the answer of defendant, L. W. James, with general replications thereto, and the special reply in writing by said Boom and Lumber Company to said answer of James; the depositions taken and filed on behalf of both the plaintiff and said last mentioned company, and upon all the exhibits filed in said cause. Whereupon the said demurrer was overruled, and the cause was referred to Jeff Lipscomb, one of the commissioners of the court, to ascertain and report upon eleven different questions which may be all condensed into and are, in substance, an inquiry of what, if anything, is due from the said Boom and Lumber Company to the plaintiff, upon the matters alleged in the bill. Under this order of reference, the said commissioner made up and submitted, on the 1st day of March, 1902, a voluminous statement and report, finding, as his general conclusion, that the said Boom

and Lumber Company, is indebted on said contract made with Pyle as aforesaid in the sum of six thousand, four hundred and sixty-six dollars and nine cents principal, with interest thereon from July 15, 1896, to March 5, 1902, one thousand, nine hundred and ninety-two dollars and fifteen cents, making, in the aggregate, eight thousand, four hundred and fifty-eight dollars and twenty-four cents, as the amount due on the day and year last aforesaid. The plaintiff filed exceptions in writing to said report, because the commissioner had allowed therein, two credits to said Boom and Lumber Company, one for three hundred and nineteen dollars and forty-two cents, and the other for one hundred and twenty-five dollars. The appellant, Condon-Lane Boom and Lumber Company, also filed thirteen specific exceptions to so many parts thereof, and a fourteenth to the report as a whole.

On the 28th day of August, 1902, the cause was again heard upon the papers formerly read, former orders and decrees, the said report of Commissioner Lipscomb, and upon the exceptions thereto, filed by both plaintiff and appellant as aforesaid. On consideration whereof, the court overruled each and every one of said exceptions, confirmed said report in accordance with the findings of the said commissioner, as to the amount due the plaintiff, J. E. Poling, trustee, on account of the matters set up in his bill, and adjudged, ordered and decreed that the plaintiff, J. E. Poling, trustee, should recover from the defendant, said Boom and Lumber Company, eight thousand, four hundred and fifty-eight dollars and twenty-four cents, with interest thereon from the 5th day of March, 1902, until paid, and his costs by him about his said suit expended. From this decree said Boom and Lumber Company was allowed an appeal. It assigns various errors, among which is the overruling of said demurrer, and refusal of the court to sustain its said exceptions to the commissioners report.

It is not contended that the court did not have jurisdiction of the general subject matter of the suit. It is plain that the court had such jurisdiction. To that extent, at least, the demurrer was properly overruled. In support of its demurrer, appellants counsel cite Clark on Contracts, p. 525, where it is stated: "It is the settled rule, subject to exceptions which are apparent rather than real, that a person cannot assign his liabilities

under a contract, or, to put the matter from the point of view of the other party to the contract, a person cannot be compelled to accept performance of the contract from a person who was not originally a party to it. The reason for the rule lies not only in the right of a person to know to whom he is to look for the satisfaction of his rights under a contract, but, more particularly, in his right to the benefit which he contemplates from the character, and substance of the person with whom he has contracted." "The exceptions to this rule are apparent rather than real. As stated in the black-letter text, a person may assign the liabilities imposed upon him by a contract which he has made if the other party to the contract consents. This, however, as we shall see, is, in effect, a new contract. It is a rescission by agreement of the old contract, and the substitution of a new one, in which the same acts are to be performed by different parties. Another apparent exception is in this, namely: that if a person undertakes to do work for another which requires no special skill, and he has not been selected for the work with reference to any personal qualifications, he may have the work done by some equally competent third person. This, however, is not an assignment of his liabilities, for he does not cease to be liable if the work is not done in accordance with the contract." *Id.* 525. *Smelting Co.* v. *Mining Co.,* 127 U. S. 379, is also cited. At pages 387, 388, Mr. Justice Gray, delivering the opinion of the court, says: "At the present day, no doubt, an agreement to pay money, or to deliver goods may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipulation, which manifests the intention of the parties that it shall not be assignable. But every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.' *Humble* v. *Hunter,* 12 Q. B. 310, 317; *Winchester* v. *Howard,* 97 Mass. 303, 305; *Boston Ice Co.* v. *Potter,* 123 Mass. 28; *King* v. *Batterson.* 13 R. I. 117, 120; *Lansden* v. *McCarthy,* 45 Mo. 106. * * * 'Rights arising out of contract cannot be transferred if

they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.'"

The plaintiff contends that the contract in question was and is assignable, and supports his contention by the citation of numerous authorities. 2 Am. & Eng. Enc. Law (2d ed). 1035, says, "As a general rule, in all cases where a contract is executory in its nature, and an executor or administrator would succeed to the rights and liabilities of a deceased party to the contract, the contract is assignable. * * * A contract in which the *delectus personae* is not material, and is an agreement for services which may be as well performed by one person as another, is assignable." Contracts in which the *delectus personae* is material, as where a person agrees to use his personal skill and knowledge, and has been contracted with by reason of the trust and confidence placed in him, cannot be assigned by such person while the agreement remains executory, without the consent of the other contracting party. When the assignment of a contract is made, its obligations will still rest upon the assignor, who, in case of default on the part of his assignee, must respond to the other party to the contract. 2 Am. & Eng. Enc. Law (2d ed). 1036. It will be observed that Pyle assigned and transferred to Poling, trustee, among other things, "all money due said Geo. Pyle, from the Condon-Lane Boom and Lumber Co. by virtue of a contract between him and said Co. all that is now due and to become due by virtue of said contract and all other property not included." No personal confidence, or peculiar skill on the part of Pyle seems to have been contemplated or contracted for by said company in the first instance. We find no reason or authority for saying that the contract in question is not assignable, and could not be assigned to Poling, trustee, by Pyle as alleged. We fail to see how appellant could be prejudiced by an assignment of the contract to Poling. It was required to pay no money until certain work was done, according to the very terms of the contract.

Appellant insists that the bill shows no liability from it to the plaintiff. This involves a construction of the contract. Appellant bought the saw logs from Pyle. No limit as to number or quantity is named. They were to be scaled by a scaler

furnished by the company, who would be satisfactory to both parties. When scaled and branded, one dollar per thousand feet was to be advanced by the company to Pyle. The logs were then to be put into Laurel Fork not more than fifteen miles from its mouth and to be driven into Dry Fork. The balance of the purchase price was to be paid when the logs were driven into said Dry Fork, but no time is fixed for the completion of that work. In order to expedite the driving of the logs, appellant proposed to pay Pyle an additional dollar on each thousand feet when he should put the logs into Laurel Fork, provided Pyle would put a good splash dam in Laurel Fork, to insure the coming of the logs into Dry Fork. The balance, in either event, was to be paid, when the timber was in the Dry Fork at or below Laurel Fork, (meaning at the mouth of Laurel Fork.) Certain prices are named. It is then stated: "These prices to hold good for one year from date (July 29 1892,) and is subject to your acceptance, *agreeing to sell all timber you cut during the next twelve months,* at the foregoing prices, otherwise we are not bound by this letter." Recurring to the bill, it is alleged therein that Pyle at the time of the assignment thereof by him had completed or nearly completed, the contract between himself and appellant company, meaning the logging contract hereinbefore set out; and that, after the said assignment was made, the plaintiff, as trustee in said assignment, went on and completed said contract in every respect. We think the allegations of the bill are sufficient, and that the demurrer thereto was properly overruled.

It will be observed that the contract fixes no time limit for the scaling, branding, or delivery of the logs. Certain advances were to be made to Pyle when they were scaled and branded. An additional advance was to be made when they were put into Laurel Fork, provided a good splash dam had then been built by Pyle to insure the coming of the logs into Dry Fork, *i. e.,* to insure the speedy delivery of the logs at the place appointed therefor. No certain time could have been fixed for the delivery of the logs in Dry Fork, as that work depended upon the uncertainty of water, and the presence of the ice in Laurel Fork, a swift mountain stream, down which the logs could be drifted only on a high stage of water therein. The parties were acquainted with the country and its physical conditions. It is

therefore but fair to say that they contemplated and fully considered all of those contingencies, when the agreement in controversy was made. Pyle sold, and the company bought of him, all of the timber which he might *cut* during the next twelve months, at the prices named in the contract. He therefore had a right to cut timber, during the entire period, and to be paid therefor the price fixed as aforesaid, upon compliance by him with the conditions specified in the contract; but it would have been an impossibility for him to have had all of the timber cut within that time by him, scaled, branded, and delivered in Dry Fork, a distance from the place of scaling and branding of about fifteen miles, within the said period. The offer of the company to pay to Pyle an additional dollar on each thousand feet, when the logs were put into Laurel Fork, provided he would build the splash dam, is evidence of the desire of the company that the logs should be delivered in Dry Fork as speedibly as possible, and that the freshets which might occur in Laurel Fork should be fully utilized for that purpose.

If a contract other than a money demand specifies no time within which performance is to take place, the promisor is allowed such time for performance as is reasonable, taking into consideration the subject matter of the contract  Hammon on Contracts, section 444; *Boyd & Co. v. Gunnison & Co.,* 14 W. Va. 1; Clark on Contracts, section 251.

Chapter 119 of the Acts of 1882, Appendix to Code of 1899, provides for the adoption of trade marks by timber dealers. Section 6 declares that, when timber is purchased by the proprietor of any such trade mark, and the said trade mark is placed thereon as hereinbefore provided, such timber shall thenceforth be deemed the property of such purchaser, without *any other or further delivery thereof,* and such timber shall thereafter be at the risk of the purchaser, unless otherwise provided by contract in writing between the parties. Section 8 further provides that, in any action, suit or contest in which the title to any timber upon which any such trade mark has been placed as aforesaid, shall come in question, it shall be presumed that such timber was the property of the proprietor of such trade mark in the absence of satisfactory proof to the contrary. It is proved that the trade mark or timber brand of the Condon-Lane Boom & Lumber Company was "Z"; that said "Z" brand

was adopted by the company, as its trade mark in 1892; that all of the logs cut by Pyle on Laurel Fork, under said contract were scaled and branded for the company, with said trade mark or timber brand, by one J. F. Gillispie, who was employed by the company for that purpose, with the assent of Pyle; that Gillispie commenced scaling and branding the logs in 1892, and finished the work in January, 1894; and that, as the logs were scaled and branded by him, they were put into Laurel Fork, at a point from ten and one-half to fifteen miles from its mouth. For this work, the company paid to Gillispie all except five dollars of the portion of the expense thereof which, by its agreement with Pyle, it was to pay. As soon as the logs were scaled and branded by the scaler agreed upon by the parties, the title of the logs passed to, and was vested in, the vendee company. The seller, Pyle, was then entitled thereon to one dollar per thousand feet; and the vendee was then entitled to a delivery thereof, at the place specified in the contract, before making any further payment, except the one dollar per thousand, contingent on the putting in by Pyle of a good splash dam as aforesaid. *Poling* v. *Flanagan,* 41 W. Va. 191; 3 Min. Inst. 98; *Morgan* v. *King,* 28 W. Va. 1; *Chapman* v. *Chapman,* 13 Grat 105.

Appellant, in its answer filed, avers, among other things, that whatever contract was made by it with Pyle, if any, by reason of the letters set out in the plaintiff's bill, had expired by reason of the very limitation shown on the face of said letters, long before the date of the assignment; and that, in addition to said expiration, the said George Pyle announced that he could not carry out said contract and expressly surrendered the same, and any rights he had thereunder, before the execution of his assignment. As will be observed, the only express limitations therein upon Pyle, as to time, are that he will sell to the company all timber cut by him during the next twelve months from July 20, 1892, at the prices named. There is neither allegation nor evidence in the record that Pyle sold any timber cut by him during that year to any person except appellant.

As to the alleged surrender of the contract by Pyle, it is claimed that, during the latter part of September, 1893, L. W. James, sued out an attachment against Pyle for a large sum of money; that soon thereafter Pyle went to Philadelphia to get

money from the aforesaid Boom and Lumber Company to pay off this claim, but did not get it.  Pyle says that, during his interview with the representatives of the company about the matter, he handed the papers then in his possession, constituting the contract, to R. F. Whitmer, in the office of the company, for examination; that when he left the office, the papers were forgotten by him; and that afterwards Whitmer promised to send them to him, which was never done.  On the other hand, the company produced two witnesses who swear, in substance, that about the 28th day of September, 1893, Pyle came to the office of the company in Philadelphia, and said he was in trouble; that an attachment had issued against him; and that he could not, and would not, carry out his contract; that he wanted to give it up; and that he then voluntarily gave it up to Mr. Lane. This evidence is in turn denied by Pyle, who further testifies that Whitmer told him that they could not pay him any money, because they had heard by telegram about the attachment, and that every thing was attached and tied up.  There are many more conflicting and contradictory statements in the testimony about this matter.  Nothing was paid to Pyle by the company for the alleged surrender of the contract.  It is proved that soon after the making of the contract, Pyle commenced to cut and put in the logs under it; that, at the time, he was in Philadelphia, all the logs had been cut; that a large part of them had then been scaled, branded and put into Laurel Fork, and driven into Dry Fork; that about two-thirds of the logs had been put into Laurel Fork, and about one-half thereof had been driven into Dry Fork, when Pyle made his assignment.  It appears that, when Pyle was in Philadelphia, and also at the time he made his assignment, a considerable sum of money was due him from the companyy.

It has been held that the delivery of a note by the holder to the maker, *with intent thereby to discharge the debt,* discharges the debt.  *Vanderbeck* v. *Vanderbeck,* 30 N. J. Eq. 265, and cases there cited.  Shortly before the time of the alleged surrender of the contract by Pyle, James had sued out an attachment against, and had caused the same to be levied upon, the property of Pyle for a large sum, afterwards fixed at thirty-five hundred dollars by an award of arbitrators, which was entered as the judgment of the court.  The rights of other creditors

had also intervened, Pyle being then insolvent, as is shown by the record, although that question is not raised. Upon the facts and circumstances disclosed, it does not seem reasonable that Pyle went to Philadelphia with intent to voluntarily and gratuitously surrender, and that he did voluntarily surrender his said contract, and relinquish his right to the money then due and to become due thereunder, as is claimed by the company. He could have done this by letter to the company, enclosing the contract. The commissioner found against the contention of the appellant upon this question, and the circuit court approved and confirmed his finding. A finding of facts by a commissioner, confirmed by the circuit court is viewed by the appellate court with peculiar respect and such finding will not be disturbed unless plainly erroneous. *Carter* v. *Gill*, 47 W. Va. 504; *Keneweg* v. *Schilansky*, 47 W. Va. 287. We cannot disturb the decree of the circuit court for that reason.

The company wrote and caused to be sent to Poling the following letter, the receipt of which he acknowledged by a reply on the 26th day of February, 1894: "Feb. 22nd, '94. J. E. Poling, Esq., Hendricks, W. Va. Dear Sir: There has been sent in to us a bill for logs scaled during 1894. We fail to recognize the bill, as we have no knowledge of our buying these logs, and therefore will not accept any responsibility in regard to same. We presume these are the logs you spoke to Mr. Whitmer about when at Hendricks, when he distinctly stated to you that the company would in no manner, shape or form purchase any more logs other than what they had purchased, as they were compelled to put their money into the railroad. These logs you put into the river at your own risk and we will in no wise be responsible for same. Yours very truly, (Signed) Condon-Lane Boom & Lumber Co."

Appellant strenuously contends that by this letter it refused to receive any logs under the said contract; that even if Pyle had the power to assign the contract to Poling, with right to Poling to carry out the provisions thereof, Poling had no right, after his receipt of the letter to attempt to deliver the logs to the company, by floating them into Dry Fork; but that he should have proceeded in such a way as to suffer as little damage as possible; and then have sued the company for its breach of the contract. If, during the performance of a contract, or after the

time for performance arrives, one of the parties, by word or act, openly and clearly refuses to perform his promise in whole or in part, the other party is thereupon exonerated from performing his part of the contract, and is at once entitled to bring action. Thus, if a man order goods to be manufactured for him, and afterwards, and before all the goods have been made and delivered, refuses without cause to keep his promise, the seller may recover the damage thereby sustained, without making or tendering the rest of the goods.  * * *  To constitute a breach by renunciation, the repudiation of the contract must be unequivocal and absolute.  A mere assertion that the party will be unable to fulfill his promise, or that he intends in the future to refuse to perform it, is insufficient.  There must be, in substance, an avowed determination not to abide by the contract.  The renunciation must deal with the entire performance to which the contract binds the promisor, else it does not discharge the promisee.  * * *  The innocent party may, if he wishes, keep the contract alive for certain purposes, in spite of the others' renunciation of it; provided, always, that he must do nothing to increase the damages otherwise recoverable.  In order that a mere notice of an intention not to perform may constitute a breach, the other party must act upon it.  If the innocent party will not accept the other's renunciation, and continues to insist upon performance, the contract remains in existence for the benefit, and at the risk of both parties. Hammond on Contracts, ss. 454, 456; *Davis v. Bronson,* 33 Am. St. R. 791, 797.  This letter is not a repudiation or renunciation of the contract.  The language, "We presume these are the logs you spoke to Mr. Whitmer about, when at Hendricks, when he distinctly stated to you that the company would in no manner, shape or form *purchase any more logs, other than what they had purchased,* as they were compelled to put their money into the railroad," is not such renunciation or repudiation of the contract as falls within the rule of law sought to be invoked by appellant.

The evidence shows that the last lot of the Pyle logs was scaled and branded by Gilispie in January, 1894, and that the measurement thereof amounted to 546,203 feet.  All the other logs were scaled and branded during the years 1892 and 1893. The monthly statements of the logs scaled, branded and put into Laurel Fork, are, for the months of August, October, Novem-

ber and December, 1892; for January, March, April and December, 1893; and for January, 1894. It also appears that the company paid to Pyle thereon as follows:

| | | |
|---|---|---:|
| 1892, | Sept. ................................................ | $132.07 |
| " | Nov. ................................................ | 221.97 |
| " | Dec. ................................................ | 105.05 |
| 1893, | Jan. ................................................ | 300.00 |
| " | Feb. ................................................ | 615.28 |
| " | Mar. ................................................ | 480.45 |
| " | April,  To Hendricks Co. ........................... | 319.42 |
| " | May ................................................ | 547.60 |
| " | Sept. ................................................ | 125.00 |

Total ........................................$2,948.94

It is further shown that no logs were cut by Pyle after the expiration of twelve months from the date of the contract; that no logs were cut by either Pyle or Poling after the assignment of the contract by Pyle to Poling; that, after a part of the logs were driven out of Laurel Fork, Wilson, the head sawyer on the company's mill, examined and made an estimate of the logs yet in the stream; that, after the assignment, Mr. Whitmer, whose name is signed to a letter dated January 11, 1894, as general manager of the company, told Pyle to go on and put the logs in the stream. Whitmer also testifies that he knew that logs were put into the stream after Pyle was in Philadelphia in September, 1893. It is further shown that the company made no objection to the scaling, branding, or placing of the logs in the stream as aforesaid. J. F. Gillispie, the scaler, selected by appellant, testifies that he scaled and branded two million, two hundred and seventy-one thousand, and six hundred and seventy-three feet of logs, which amounted, at the prices named, to ten thousand, two hundred and forty-eight dollars and eleven cents; that monthly statements of the timber scaled and branded by him were furnished to the company as it was put into the stream; that these logs were driven out of Laurel Fork into Dry Fork; that part of them came down Dry Fork to the said Boom and Lumber Company's dam; that some of them were sawed on the company's mill at Bretz, some went on down the river, and some were taken out of Dry Fork and sawed into pulp wood by the company; that he saw all of these logs put into Laurel Fork; that he made it his business to see that they were properly put

in and branded; that the last of the logs were branded and put into Laurel Fork in January, 1894; that George Pyle had charge of the work of driving the logs into Dry Fork, so far as he knew; and that he saw a good many of the logs driven into Dry Fork. It is also shown that one million, six hundred and seventy-four thousand and two hundred and sixty-four feet of the logs were put into Laurel Fork before the assignment, and that about one-half of the whole amount, by estimation, had been driven into Dry Fork within one year from the date of the contract. It is not contended that proper diligence was not used in the prosecution of the work, either before or after the assignment, or that the assignment of itself occasioned loss or damage to appellant. It appears that Pyle had charge of most of the work of drifting after the assignment. No error of calculation in said report of the commissioner is claimed. The exceptions are based mainly on the alleged insufficiency of the evidence to support the several findings therein.

It is also insisted as error that the circuit court did not pass upon the exceptions, made and filed by appellant, to plaintiff's depositions. It does not appear by the record that the court sustained or overruled said exceptions. We cannot say what, if any, weight, the court gave to the evidence so excepted to. We do say, however, that there is sufficient legal evidence in the cause to justify the general finding of the commissioner, and the decree of the court thereon. It must be presumed that the court considered only legal and proper evidence. *Bank* v. *Prager & Son et al.,* 50 W. Va. 660. "The decree of the circuit court confirming the report of its commissioner will not be disturbed on appeal unless plainly wrong." *Bank* v. *Bowman,* 36 W. Va. 649.

Applying the oft repeated rule of this Court, above stated, the decree of the circuit court complained of must be affirmed, and the cause remanded to the circuit court of Tucker county, that a final determination may be had of the remaining questions in the cause, or of such of them as may be deemed proper.

*Affirmed.*