HOGGSON BROS. v. FIRST NAT. BANK OF ROSWELL.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1916. Rehearing Denied May 4, 1916.)

No. 4433.

CONTRACTS ⊝⟳261(6)—RESCISSION—REFUSAL TO PERFORM.

Where architects, who had contracted to build a bank building for a fixed sum, wrote to the bank, suggesting that the work desired would cost more than the amount limited, and stated that, if the bank insisted on keeping within that limit, the architects would prefer not to do the work, to which the bank replied that they considered the matter off and would begin negotiations elsewhere, whereupon the architects telegraphed that they were ready and anxious to begin the work, the statement that they would prefer not to do the work was not an absolute refusal to do it, which alone is sufficient to authorize rescission by the other party, and they can recover under the contract for their services and disbursements theretofore rendered.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1174; Dec. Dig. ⊝⟳261(6).]

In Error to the District Court of the United States for the District of New Mexico; William H. Pope, Judge.

Action by Hoggson Bros. against the First National Bank of Roswell. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with directions to enter judgment for plaintiffs.

Selden Bacon, of New York City, for plaintiffs in error.

James M. Hervey, of Roswell, N. M. (William C. Reid, of Roswell, N. M., on the brief), for defendant in error.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. Hoggson Bros., hereinafter called plaintiff, sued the First National Bank of Roswell, New Mexico, hereinafter called the Bank, to recover for services rendered and expenses disbursed in connection with four alleged contracts, dated April 21, 1906, June 22, 1907, August 24, 1907, and December 8, 1908. A jury was waived and the action tried by the court. Special findings of fact were made, upon which judgment was rendered in favor of the Bank. Plaintiff brings the case here, assigning as error that on the facts found the judgment should have been in its favor.

The trial court found, and in which finding we concur, that the three first contracts were all merged into the contract of December 8, 1908, and that plaintiff must recover on that contract, if at all. It also ruled that there was no breach of said contract on the part of the Bank, for the reason that the plaintiff was the first to breach the contract, thereby justifying the Bank in refusing to perform the same. In the contract of December 8th, the plaintiff agreed to construct for the Bank a new bank and store building at Roswell, N. M., and to furnish all architectural services, including sketches, plans, drawings, specifications, labor, and material for $70,000. The contract also contained the following stipulation:

"We agree to allow you the privilege of canceling the order at any time before the work is begun, and, in the event of our not going on with the work, to accept as our remuneration a sum based on the schedule of charges endorsed by the American Institute of Architects."

The twenty-fourth finding of the trial court is as follows:

"Up to its writing the said letter of January 25, 1909, the plaintiff fully and in all respects kept and performed all terms, conditions, and provisions of each and all its said agreements with the defendant; and at no time prior to the receipt of the defendant's letter of the 16th. day of February, 1909, failed in any way to perform any of said terms, conditions, and provisions of any of said agreements, save and except by sending the said letter of the 25th day of January, 1909."

The correspondence between plaintiff and the Bank, which the trial court found as a conclusion of law constituted a refusal by the plaintiff to perform the contract, is as follows:

"New York, Jan. 25/09.

"E. A. Cahoon, Cashier First National Bank, Roswell, New Mexico—Dear Sir: We acknowledge receipt of yours of the 18th, and the writer believes he understands what your requirements are. Our difficult problem is to include in our plans, sketches, specifications, details, and samples everything that we know you would like for the limited amount of our order. When writer was in Roswell, you will recall that he brought with him the details complete for the order for $50,000 you had previously signed, and you were of course aware that, until those details were worked out, figured, submitted to, and accepted by you, nothing was settled but the limit of expenditure. You will also recall that, when you broached the subject of a new building, I told you it would cost $70,000 to $75,000, and supposed, of course, you would understand that by a guess of mine—varying $5,000—it was very clear that I could not tell whether or not the amount would include everything required.

"There is no question but that $70,000 will give you a bank building, boiler house, and store; but we have worked out this proposition faithfully, and the bids we have received confirm our own figures, and if you desire the interior of your banking room furnished and equipped as per the details submitted, to build the construction work so that it would be in keeping will require an expenditure as specified in our estimates, and if you insist on building it to keep the cost within $70,000 *we would prefer not to do the work.* The profit in it is very small; there is no way for us to increase it. If the cost by any means is decreased, the bank makes the saving; we don't, and we would not care to start a job that we were not sure would be a satisfactory one to all concerned.

"We cannot feel that we have misled you in any way, or led you into anything not plainly stated beforehand. You will find that, on the signing of each order, details were referred to each time that were to be submitted and approved, and nothing was settled until they were approved. We are not responsible if you change your requirements. We do not become responsible until we have the designs and drawings made, duly estimated, and have submitted all the details which we can include for the amount of the order. If these details are satisfactory, we are ready to proceed, and your acceptance of them makes the contract complete; if they are not, they have to be adjusted until they are, if possible. If not possible to include all the items wanted by the owner in the appropriation, in a quality of material and workmanship that we will be responsible for, the owner has the privilege of cancellation as provided in the contract.

"You have the details in full—everything I believe that can be submitted to produce your work. We have carefully estimated every item, and the figures given you we know are lower than any one else can give you the same thing for. There is no question of further expense. You know beforehand

every time just what the limit is. You must not think, however, that we can work into an appropriation work that costs to execute much in excess of same. We cannot do the impossible.

"Where your misunderstanding occurred was in your taking it for granted that the amount of our order would do anything required. We had twice gone through the same thing before, and again started on exactly the same proposition, which was to see if the appropriation of $70,000 (the amount of our order) would do what you wanted done, and it is in keeping with the principle of this house that, believing a mistake would be made if an operation were attempted with an insufficient appropriation, to tell you so frankly and take a cancellation, rather than deliver a disappointment to one of our customers. Perhaps you do not realize that we have an allowance to move you into the new store, fit you up, furnish you with a temporary banker's safe—fireproof—and that, did we not feel that it was absolutely necessary, we would not ask for a cent over $70,000.

"I am convinced that, if the bank tries to put up the three buildings and furnish the bank up to the value we have been figuring on, or $70,000, the result will be a disappointment, and we prefer to take the cancellation rather than a job with not enough appropriation to do it well. You have all the details of what we propose; it is simply up to you to accept it, or any part of it, or reject it. The sketches submitted would give you a notable building, and a bank that you would be proud of. Perhaps I received a wrong impression from Mr. Godair of how the store building would be fitted up. We are willing to deduct our allowance of $7,000 for the store building, and go ahead with the bank; we are willing to do anything that is reasonable, will meet you in any way that is fair; but we always feel that responsibility for a result, and we cannot undertake to spread $70,000 over a surface so large that the frame underneath will 'show through' and run the chance of having you come back at us.

"The one great regret I have is that you have not seen some of our work—have not talked with people for whom we have worked—for I always feel that letters without the personal contact do not fully satisfy, and I want, as a closing word, to say that we sometimes have difficulty before starting work in satisfying clients with the amount of work we could give for the amount of the order; we do not, however, nor have not left a customer dissatisfied, after we have completed a contract.

"Awaiting your decision, I am,

"WJH—HP          Sincerely yours,      W. J. Hoggson.

"As soon as we hear from you we are ready, if desired, to send a man down to Roswell, who will have the drawings for store finished, let the contracts for same, and then, as soon as the drawings and specifications for bank are completed and accepted, we will have one of our superintendents go and take charge of your temporary quarters, and the erection and completion of the building."

                    "Roswell, New Mexico, February 16, 1909.

"Mr. W. J. Hoggson, New York City—My Dear Sir: I find awaiting me, upon my return from a month's trip to Panama, your letter of January 25th. This letter I have given very careful consideration and the subject-matter I have discussed at length with my board of directors. The board and Mr. Godair, with whom I have been in active correspondence all the time, insist that we do not exceed our limit of $70,000, agreed upon between us when you were in Roswell. As I understand your letter, you advise me that you cannot give us, for that price, what we desire. I therefore take it, from the paragraph in your letter which reads, 'And if you insist on building it to keep the cost within $70,000, we would prefer not to do the work,' that you do not wish to continue negotiations further. Basing my decision, therefore, on this statement of yours, we will call the matter off and will open negotiations elsewhere.

"Our negotiations with you during the present year have consumed so much time that it will be necessary for us to continue for another year in our present quarters, as it will not be convenient for us to be in temporary

quarters during the winter months, and our desire was to begin operations promptly by March 1st, and have our new building completed by the following winter. This necessitates our going over until another year, and it would doubtless not suit either of us to drag out our negotiations further.

"Awaiting your reply, I am,

"Yours very truly,                                          E. A. Cahoon, Cashier."

Telegram.

"Feb. 23, 1909.

"E. A. Cahoon, Cashier First National Bank, Roswell, New Mexico: Ready and anxious to begin your work if you will be reasonable, but will have to give and take to bring appropriation and requirements together; can complete building when desired; superintendent could leave at once and start store building while waiting for balance of plans. Corpus Christi building finished in seven months.                                          Hoggson Brothers."

And that in reply thereto the defendant sent the plaintiff the following letter on February 24, 1909:

"Roswell, New Mexico, February 24, 1909.

"Messrs. Hoggson Bros., New York City—Gentlemen: We are in receipt of your telegram of the 23d inst. After giving due consideration to the matter, we adhere to our statement in our last letter, made in accordance with your expression that you did not desire to do the work provided we could not see fit to exceed our limit of $70,000. We therefore beg to advise you that negotiations toward the construction of a building for us by you are now discontinued.                                          Yours very truly, E. A. Cahoon, Cashier."

The trial court also found:

"There were no other communications between the parties on the subject of refusal to go on with the contract, and no other evidence of any refusal on the part of the plaintiff to perform the $70,000 contract, or any of the contracts or contradicting the correspondence found in this finding."

We do not think the Bank was justified in assuming that the plaintiff by its letter of January 25, 1909, absolutely refused to perform the contract when it said that it "would prefer not to do the work" if the cost was to be kept within $70,000. The expression of a preference not to do the work, and an absolute refusal to do it, are two very different things. Viewing the letter as a whole, it would seem to have been an effort on the part of the plaintiff to induce the Bank to increase the limit of cost of the new bank building, so that a better building might be built. The telegram which the plaintiff immediately sent to the bank in answer to the letter of February 16, 1909, discloses the true feeling on the part of the plaintiff, and we do not think the telegram indicates that the plaintiff intended to absolutely refuse to perform the contract.

The law seems to be settled that a refusal to fulfill a contract must be absolute to be equivalent to an assent to its dissolution, and to authorize the other party to rescind it; such refusal must be in no way qualified, and should substantially amount to an avowed determination of the party not to abide by the contract. Fay v. Oliver, 20 Vt. 118, 49 Am. Dec. 764; Benjamin on Sales (7th Ed.) § 568; Dingley v. Oler, 117 U. S. 490, 502, 6 Sup. Ct. 850, 29 L. Ed. 984; McBath v. Jones Cotton Co., 149 Fed. 383, 386, 79 C. C. A. 203; Smoot v. United States, 15 Wall. 36, 49, 21 L. Ed. 107; Swiger v. Hayman, 56 W. Va. 123, 127, 48 S. E. 839, 107 Am. St. Rep. 899, 3 Ann.

Cas. 1030; Armstrong v. Ross, 61 W. Va. 38, 48, 55 S. E. 895; Bannister v. Victoria Co., 63 W. Va. 502, 61 S. E. 338; Poling v. Boom Co., 55 W. Va. 529, 543, 47 S. E. 279; Kilgore v. Baptist Ass'n, 90 Tex. 139, 142–143, 37 S. W. 598; Provident v. Ellinger (Tex. Civ. App.) 164 S. W. 1024, 1026; Roehm v. Horst, 178 U. S. 1, 12, 20 Sup. Ct. 780, 44 L. Ed. 953; Wells v. Hartford Manilla Co., 76 Conn. 27, 55 Atl. 599.

We think under the facts found that the plaintiff was entitled to judgment on the contract of December 8, 1908. It is stipulated in the record that if this court finds that compensation is recoverable under the fourth cause of action only, which is the contract above mentioned, that the sum due the plaintiff would be $1,200. It is also stipulated that plaintiff, during the period after the third contract and antecedent to the making of the last contract, necessarily incurred disbursements in and about the work amounting to $408.85. We are of the opinion that under the facts found plaintiff is entitled to recover these disbursements. We therefore are of the opinion that upon the findings of fact made by the trial court the plaintiff is entitled to judgment in the sum of $1,608.85.

The judgment below, therefore, will be reversed, and the case remanded, with directions to enter judgment in favor of the plaintiff and against the Bank for the sum so found due, together with interest at the legal rate from March 3, 1909, the date plaintiff presented its bill for services and expenses to the Bank.

And it is so ordered.