EDWARD T. LINDNER, *Executor, etc. v.* LOVE FRY DANIELS, *et al.*

(No. 8813)

Submitted January 31, 1939. Decided March 23, 1939.

*J. O. Henson,* for appellants.
*Martin, Seibert & Beall,* for appellee.

KENNA, JUDGE:

This chancery proceeding was brought in the Circuit Court of Berkeley County by Edward T. Lindner, executor of the estate of M. Maude Fry, deceased, against Love Fry Daniels, John L. Daniels, her husband, the Peoples Trust Company, a corporation, and others, who, together with Mrs. Daniels, are legatees under the last will and testament of M. Maud Fry, deceased, for the purpose of setting aside an alleged written transfer and also indorsements of eleven certain notes secured by deeds of trust, which purported to vest title in Mrs. Daniels of property owned by Miss Fry in her lifetime, the face value of which aggregated ten thousand, seven hundred fifty dollars, and for the further purpose of requiring an accounting for certain funds belonging to the testatrix which had allegedly come into the hands of Mrs. Daniels during the testatrix' lifetime. The relief sought by the bill of complaint is based upon an allegation of the testatrix' incompetence and of undue influence used to procure the

transfer, indorsement and delivery of the notes referred to and the further contention that the deceased's infirmity brought about Mrs. Daniels' possession of the funds that it is sought to have her account for.

At the time of her death in Martinsburg at the home of her sister, Mrs. Daniels, the deceased was sixty-four years old, unmarried and suffering from a malignant illness known to the medical profession as carcinomatous metastases, or cancer of the bone marrow, which caused her death. A little over fifteen months before her death, Miss Fry had undergone a thorough medical examination at the Barker Clinic, a part of Johns Hopkins University. There her malady had been diagnosed and its incurable and progressive nature discovered. At that time Miss Fry had been in poor health for approximately eighteen months. She had gone to Martinsburg to live with her sister, Mrs. Daniels, in the summer of 1933, and had paid room rent and board. Miss Fry was five feet, four and one-quarter inches in height and weighed approximately one hundred and sixty pounds. In March, 1935, her left femur parted because it could not bear her weight. The bone would not reunite so that she was bedridden from then until the time of her death, and for several months preceding that time she had been under the constant care of a physician and a nurse. Narcotics were administered, the dosage of which was continually increased.

The paper purporting to be an assignment of the notes is dated April 16, 1935, as is the certificate of acknowledgement appended to it. Delivery of the notes, demanded from the agent in whose possession they were in compliance with the paper's terms, was refused. Then followed the claimed indorsements of all eleven notes to Mrs. Daniels on April 19, 1935. Miss Fry died May 3, 1935.

The cause was submitted to a judge from an adjoining circuit, and the far greater part of the testimony contained in a voluminous record was heard by him in chambers. The decree entered found in favor of the

plaintiff and granted the prayer of the bill to the extent of setting aside and holding for naught the alleged assignment and the indorsements of the eleven notes, and denied to the plaintiff the prayer of the bill for an accounting with Mrs. Daniels. A very exhaustive and well-reasoned opinion of the trial chancellor is made a part of the record. The defendant, Mrs. John L. Daniels, prosecutes this appeal and the plaintiff below assigns cross-error. There are eleven assignments of error by the defendant below, appellant, all but three of which have to do with the probative weight to be attached to certain testimony and for the supposed ignoring of certain presumptions.

The seventh assignment of error has to do with the fact that evidence was admitted, the objections to which were to be acted upon later, which was never done, according to the showing in the record. This does not constitute reversible error, the presumption being, where the record does not disclose a specific ruling, as here, that in considering the cause the trial chancellor has ignored inadmissible testimony. *First Nat. Bank* v. *Prager & Son et al.*, 50 W. Va. 660, 41 S. E. 363; *Poling* v. *Condon-Lane Boom & Lumber Co.*, 55 W. Va. 529, 47 S. E. 279.

The tenth assignment of error is that the defendant was required by the final decree to account for income theretofore paid to her as interest upon the notes adjudicated to belong to the decedent's estate in spite of the fact that on Dcember 12, 1936, the trial court had entered a decree which entitled Mrs. Daniels to this interest. We do not agree with the interpretation placed by counsel for the appellant upon the language of the decree referred to. The provision reads that Mrs. Daniels "is hereby allowed the use of the income for the eleven thousand dollars on the aforesaid first trust notes." The decedent's bequest to Mrs. Daniels reads as follows: "I leave to my sister, Mrs. John L. Daniels ($11,000.00) eleven thousand dollars in first trust notes with B. F. Saul Co. only interest to be used unless needed & balance at her death to go to Pauline Eutesler * * * ."

An ambiguous interlocutory order granting the "use" of a fund in *custodia legis* to one of the parties in a chancery proceeding which is construed by the trial chancellor by a subsequent order requiring the fund to be repaid, is to be given the meaning accorded it by the trial chancellor unless that meaning appears to be plainly erroneous.

It is not difficult to perceive that the "use" of the interest thereafter payable upon notes in the possession of Mrs. Daniels' counsel could be ordered by the trial chancellor to be awarded to Mrs. Daniels at her behest and in the final decree adjudicating the notes in question to have been a part of the decedent's estate, he could order that the notes be surrendered to the executor and that the interest payable thereon since the testatrix' death be paid to him and pass through his hands. No decree has been entered depriving Mrs. Daniels of the benefit of the legacy, and the supposition that that was the trial chancellor's purpose is not to be indulged in.

Dr. Daniels denied that he had requested Miss Fry to live in his home, and in attempted contradiction a witness was permitted to testify as to what the testatrix while alive had said to her concerning the occurrence. This is the eighth assignment of error. This evidence did not bear directly upon any of the material issues, and the ruling of the trial chancellor admitting it "for the time being", not followed by any ruling specifically admitting nor excluding it, we think could not be regarded as prejudicial error. The testimony in question is not essential in order to sustain the trial chancellor's decree, and for that reason its admission, though erroneous, is not to be regarded as prejudicial.

The other assignments of error relate to the contended weight that should have been accorded to certain parts of the testimony and to presumptions which should have been given effect, resulting in a more satisfactory outcome for the contentions of the appellant.

This is an extremely regrettable kind of litigation and while it is not within the province of this Court to attempt to direct litigants in matters inapplicable to the public good, we cannot help but be convinced that a de-

tailed discussion other than has already been indulged in would only tend to further emphasize the misunderstandings between the parties litigant. It suffices for us to assure them that the record has been meticulously examined and the cited authorities considered with the consequence that we see no error prejudicial to the appellant in the final decree.

Neither do we find prejudice to the appellee under his cross-assignment of error. We are of the opinion that the trial chancellor's finding to the effect that at the time Miss Fry began living in Mrs. Daniels' home she, by implication, authorized Mrs. Daniels to act as her agent in so far as the routine of handling Miss Fry's funds was concerned. Furthermore, Miss Fry was paying to Mrs. Daniels room rent and board, and through Mrs. Daniels, her doctor bills, and her nurse's salary, in addition to other incidental expenses, and this record makes no showing of a definite time prior to Miss Fry's death at which such an implied agency, which we think is well nigh undeniable, could be said to have terminated. We are of the opinion that the accounting required by the trial chancellor of Mrs. Daniels is sufficient to adequately settle the affairs of the agency.

Therefore, the decree of the Circuit Court of Berkeley County is affirmed and this appeal dismissed.

*Affirmed.*