HARRY W. CLARK *vs.* FRANK P. STETSON.

Androscoggin.    Opinion April 29, 1916.

*Contract. Meeting of minds of parties to contracts. Oral contract for sale of land. Remedies of parties as to alleged breach of contract. Statute of Frauds.*

In an action for money had and received, brought to recover the sum of fifteen hundred dollars paid on account of the purchase price of a farm with farming tools and stock, upon motion for new trial by defendant it is
*Held:*

1. That it is a fundamental principle of law that the minds of the parties must meet and if an actual and honest misunderstanding is proven to have existed, the contract is not perfected.

2. That the plaintiff's evidence if assumed to be true proves, not a failure to contract because of misunderstanding or misapprehension, but a breach of contract on the defendant's part. The fact that parties vary at the trial as to the terms of the contract in controversy does not convert a breach of contract into a want of contract, nor change the remedy of the parties.

3. That there was nothing confusing, indefinite or ambiguous about the terms of the trade in this case, and the emphatic statements of the plain-

tiff and his witnesses leave no room for doubt that they were clearly understood by both parties at the time the trade was made.

4. That the plaintiff's claim that no contract was in fact made lacks sufficient support in the evidence to warrant the jury in finding a verdict in his favor.

Action of assumpsit to recover the sum of fifteen hundred dollars paid by plaintiff to defendant as part of the purchase price of a certain farm belonging to defendant. Plaintiff claimed that no contract existed because of failure of parties to agree on terms. Certain amendments for plaintiff were filed and allowed. Verdict for plaintiff. Defendant filed general motion for new trial. Exceptions to charge and rulings of presiding Justice were allowed. Motion for new trial sustained. Verdict set aside.

Case stated in opinion.

*White & Carter,* for plaintiff.

*Newell & Skelton,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, PHIL-BROOK, JJ.

CORNISH, J. This case is before the Law Court a second time. It is an action for money had and received brought to recover the sum of fifteen hundred dollars paid on account of the purchase price of a farm with farming tools and stock in the spring of 1913. At the first trial the plaintiff rested his case upon two grounds which were quite inconsistent with each other, first that the minds of the parties never met upon the terms of the contract so that no contract in fact existed; and second, that the contract if made was rendered voidable because of the false representations of the defendant, and was seasonably rescinded by the plaintiff. The plaintiff obtained a verdict at that trial which was set aside by this court, the opinion holding that there was insufficient evidence to sustain it on either ground. *Clark* v. *Stetson,* 113 Maine, 276. At the second trial the plaintiff abandoned the contention of fraud, and relied solely on absence of contract. He filed an amendment to the writ which was allowed, and in which his claim that the terms of the contract were "ambiguous, indefinite and not understood alike by the parties" was set forth in greater detail. The jury

again returned a verdict for the plaintiff and the case is before this court on defendant's motion and exceptions. It is only necessary to consider the motion.

The plaintiff urges that in three particulars the minds of the parties did not meet, viz, on the price, the items of personal property included in the trade, and the terms of the reservation of a right of way, whether continuous or for winter use only. The greatest stress, however, is placed upon the first of these, the alleged misunderstanding as to the contract price.

A painstaking review of the record in this case, which contains much of the testimony of the parties given at the former trial, leaves little room for doubt that a price was agreed upon at the time. From the former evidence the conclusion was almost irresistible that the agreed figure was five thousand dollars, as the defendant claimed and as the opinion held. At this trial, in order to establish his theory of misapprehension more solidly the plaintiff attempts to explain some of his admissions in the former trial that led to that conclusion. He emphasizes more strongly that Mrs. Stetson was the agent of her husband, who was an invalid and physically unable to attend to business details in making this sale, that while her asking price was five thousand dollars her final terms were forty-five hundred dollars. He insists that Mrs. Stetson gave him this figure on several occasions in clear and unequivocal language and he is corroborated by his wife and two other witnesses to whom Mrs. Stetson made the same statement. He further states that the payment of fifteen hundred dollars was made in the presence of both Mr. and Mrs. Stetson and he then asked them if everything was all right as they had talked and Mrs. Stetson said "yes, but they ought to have five thousand dollars for the farm." The plaintiff then said if they were to ask five thousand dollars he would talk no further, because they had asked only forty-five hundred dollars and it was a good price, whereupon Mrs. Stetson "spoke up and says if she told me I was going to have it for forty-five hundred dollars I was going to have it," and Mr. Stetson said "all right." Taking all this at its full value, and assuming the facts and the conversation to be as the plaintiff claims, they by no means prove that the minds of the parties did not meet.

The greater the emphasis laid by the plaintiff upon the authorized and repeated statements of Mrs. Stetson, the stronger he makes his contention that forty-five hundred dollars was agreed upon, and the less opportunity he leaves for misunderstanding between the parties. All the circumstances as well as the conduct of the parties render incredible the contention that the price was not fully understood. The plaintiff was a locomotive engineer living in the city of Lewiston, and was desirous of purchasing a farm in the suburbs of that city. It was a transaction of great moment to him. The price would naturally be a matter of prime importance and would stand at the very threshold of the negotiations. It was of equal importance to the defendant. The parties had various preliminary interviews and on April 22, 1913, the plaintiff paid fifteen hundred dollars on account and took a receipt therefor. It is inconceivable that he would do this unless the price was clearly understood, and according to his own testimony it was. It was then agreed that the balance should be paid on or before May 15th. Two days later, on April 24th, the plaintiff entered into occupation, moved upon the premises with his family, and carried on the place thereafter. On May 15th, the plaintiff and the defendant's wife met at an attorney's office, ostensibly for the payment of the balance of the consideration and the transfer of title. But this was not done. The defendant's wife says the reason given by the plaintiff was that a party from whom he had expected to procure a portion of the money had disappointed him. The plaintiff in the second trial says the reason given was that "the old man had gone back on him," meaning to imply but not saying in express language that the defendant had raised the price from $4500 to $5000. Whichever statement is true it is fair to infer from the memorandum on the receipt "30 days from 15th of May," that an extension for that length of time was granted to the plaintiff. About the middle of May he plowed a portion of the farm. He sold one of the animals he had bought. He continued to occupy the premises for two and one-half months in all or until July 7, when he delivered the keys to the defendant and moved away. No claim of misunderstanding as to price was raised during all that time, and even at this trial the reason assigned by the plaintiff for leaving the place is not

that there was a failure of the parties to contract in the first instance, but that the defendant had "gone back on his word," in other words had broken the contract once made. The defendant contends that the reason why the plaintiff gave up the trade was his inability to raise the required balance, but rejecting this and assuming, without deciding, that the plaintiff's evidence is true, it proves not a want of contract but a breach of contract. In failing to recognize this distinction the jury plainly erred.

Breach of contract is one thing, failure to contract because of misapprehension is quite another. Nor can the different versions given at the time of trial convert the one into the other. The crucial moment was when the contract was made. Did the parties then understand its terms alike? After a controversy has arisen and the trial is on, they differ widely. That is to be expected. If in every such case the subsequent divergence of testimony could be converted into a misunderstanding at the inception, our courts would be filled with actions brought by dissatisfied suitors to recover back what they had paid on contracts unwisely made. That cannot be.

It is of course a fundamental principle of law that the minds of the parties must meet, and if an actual and honest misunderstanding is proven to have existed the contract is not perfected. "If two parties in bargaining do actually misunderstand each other, if their language is equivocal and one is meaning to speak of one subject and the other of another, it is clear that there is no contract for there is not that aggregatio mentium necessary to make one." *Oldham* v. *Kerchum,* 79 N. C., 106, 28 Am. Rep., 302.

Many illustrations may be found. Thus it may be a misunderstanding as to the identity of the person contracting; as when one party thought he was dealing with a corporation formed in South Dakota, when in fact it was a corporation of the same name formed in Maine; *Brighton Packing Co.* v. *Butchers Association,* 211 Mass., 398; or when one party supposed he was dealing with a corporation, instead of with an individual under a corporate name, *Fifer* v. *Clearfield &c. Coal Co.,* 103 Maryland, 1, 62 At., 1122; or contracting with an agent personally instead of with an undisclosed principal, *Winchester* v. *Howard,* 97 Mass., 303. Again the

honest misunderstanding may arise over the subject matter, often-times from the ambiguous terms used; as in a written contract for the sale of land on Prospect street in Waltham, when the purchaser thought he was buying a tract on another Prospect street in Waltham, in no way connected with that mentioned in the agreement, and a long way off therefrom. *Kyle* v. *Kavanagh*, 103 Mass., 356; or where one supposed he was buying five car loads and the other supposed he was selling one car load, the misapprehension arising from the confusing and ambiguous language in the seller's price lists and quotations, *Singer* v. *Grand Rapids Match Co.*, 117 Ga., 86, 43 S. E., 755.

This general rule is stated by the Massachusetts court as follows: "There may be cases where a misapprehension, satisfactorily proved, might show that no contract had been made; as for instance where the subject matter of a contract had been mistaken. If, in a negotiation for the sale of property, it should appear that the seller had reference to one article and the buyer to another, or if the parties supposed the property to be in existence when in fact it had been destroyed no contract would grow out of the negotia-tion." *Rice* v. *Dwight Mfg. Co.*, 2 Cush., 80, 86.

The evidence in the case at bar is clearly not of such a character as to place it in the class with the cases just cited. There was nothing confusing, or indefinite, or ambiguous or equivocal about the price here. It was a simple statement of amount. After all the conversations between the parties there was practically no opportunity for misapprehension. The price agreed upon was either one figure or the other, and whichever it was there was a completed contract. This case falls rather in line with the follow-ing where the jury were left to say which contention was correct. As in an action of assumpsit to recover for five hundred and thirty loads of sand, at an agreed price, as the plaintiff said, of fifteen cents per load, while the defendant contended it was ten cents a load, *Copeland* v. *Brockton St. Ry.*, 177 Mass., 186; or in an action to recover for hauling lumber where the plaintiff claimed one price and the defendant another, *Swain* v. *Cheney*, 41 N. H., 232; or for the use of a stationary engine, the agreed terms of rental being in dispute. *Noyes* v. *Cushnoc Paper Co.*, 113 Maine, 565. As well

might the plaintiff in any of these cases have claimed that there was no contract, as can the plaintiff in the case at bar.

Giving then full force to the plaintiff's evidence, and assuming, without deciding, that the consideration was forty-five hundred instead of five thousand dollars, the plaintiff's remedy was not to bring an action to recover back the partial payment, fifteen hundred dollars, on the ground that no contract had been made, but to tender the balance of the purchase price, and if the defendant refused to convey, then seek his remedy for breach of contract in law, or through specific performance in equity. The contract being oral, the statute of frauds might have prevented him from maintaining his action at law, but the remedy in equity would seem to have still been open to him. The remedy pursued is not appropriate.

A word should be added as to the second ground of misapprehension claimed now by the plaintiff, the identity of personal property included in the sale. A careful study of the evidence warrants no such conclusion. Both the plaintiff and defendant agree that the purchase included all the stock on the farm, and all the farming implements and tools with a few exceptions. There is no controversy over the stock. There is controversy over the hens and some of the implements. But the plaintiff himself inspected the premises before purchase, made out a long list of articles to be included in the sale, examined this list with the defendant and they both agreed to its correctness. When the plaintiff took possession several of the articles which he supposed he had purchased had been taken away or were withheld, and the defendant claimed that they were not included. This however did not prove that no contract had been made. If they had been taken by the defendant and belonged to the plaintiff, the plaintiff's legal rights were secure. But these rights grew out of the existence and not out of the nonexistence of the contract itself.

So far as the right of way from a rear wood lot was concerned, the plaintiff claimed that the reservation was for winter use only; the defendant, that it was to be used all the year through. Little stress, however, is laid on this point because the difference in contentions represents little in value, and, whatever the value, it

affects the legal existence of the contract no more than the other points already considered.  On none of the grounds can the plaintiff recover.

It is not difficult to see that the jury were moved by sympathy in this case, and naturally so, for the plaintiff had paid fifteen hundred dollars and then had abandoned the farm.  They sought to reimburse him for his loss.  But this could only be done along legal lines, and the evidence here is of such a character, in view of the conduct of the plaintiff himself, as to absolutely preclude a finding that no contract was in fact made between the parties.  Upon no other theory could this verdict have been rendered under the instructions of the presiding Justice, and as that theory falls the verdict must fall with it.

*Motion   sustained.*
*Verdict   set   aside.*