ISAAC FRENKIL ᴇᴛ ᴀʟ. *vs.* EDWARD G. HAGAN.

*Securing Cancellation of Government Contract—Compensation for Services—Validity of Agreement—Evidence as to Terms—Prayers and Instructions.*

In an action to recover compensation for securing the cancellation of a government contract, wherein plaintiff contended that the compensation was to be one-third of the contract price, and defendant contended that it was to be one hundred dollars,

it was proper to refuse prayers which sought to have submitted to the jury the value of the services as the basis for a verdict.

p. 104

One may lawfully employ an agent to assist him in obtaining relief from a claim of the government against him, provided the services to be rendered are of a legitimate character. p. 104

The services which may legitimately be contracted for by one seeking to obtain relief from a claim against him by the government, or seeking to procure a government contract, do not include the use of personal or political influence. p. 105

In an action to recover compensation for services in securing the cancellation of a claim by the government against defendant, *held* that, there being evidence from which the jury might find that plaintiff was expected to render political influence for this purpose, defendant was entitled to have that question submitted to the jury, and a refusal of a prayer to that effect was error.

p. 105

There being evidence that defendant agreed to pay plaintiff one-third of any amount recovered by or released to defendant, and also evidence that defendant agreed to pay him one hundred dollars, it was error to grant a prayer that the verdict must be for defendant unless the jury find that he agreed to pay one-third. pp. 99, 105

It was error to refuse a prayer that if plaintiff offered to render his services without charge, but defendant promised to pay him as much as one hundred dollars, and no other agreement for compensation was made, then their verdict can only be for the sum named, and that there should be credited on such sum a lesser sum admitted by plaintiff to have been received, if such payment was on account of plaintiff's services. pp. 99, 105

There being evidence that a certain sum refunded by the government to defendant, being the cash deposit made by him on account of the contract, was not included in the sum on which plaintiff's percentage of compensation was to be calculated, it was prejudicial error to refuse defendant's prayer submitting that question to the jury. p. 105

In an action to recover compensation for securing the cancellation of a government contract, a prayer by defendant that

if the jury found that plaintiff urged political considerations in securing such cancellation, that plaintiff was the son of a man holding a prominent political position in the New York municipal administration, and that the government official who cancelled the contract was influenced by these considerations, plaintiff could not recover, was defective as improperly segregating a single fact.                                        p. 105

*Decided June 7th, 1924.*

Appeal from the Superior Court of Baltimore City (HEUISLER, J.).

Action by Edward G. Hagan against Isaac Frenkil and Samuel M. Frenkil, co-partners trading as the Baltimore Plumbing Supply Company. From a judgment for plaintiff, defendants appeal. Reversed.

The plaintiff's prayers were as follows:

*First.*—The court instructs the jury that if they shall find that the defendants employed the plaintiff to represent them in an effort to secure the rescission of a contract entered into by the defendants to purchase certain pipe from the United States Government, mentioned in the evidence, and agreed that if said contract of purchase was rescinded by the United States Government the defendant would pay to the plaintiff for his services in representing them in the premises a sum equal to one-third of the amount of the purchase price of said pipe, and that the plaintiff accepted said employment, and did thereafter represent the defendants in conducting negotiations in the defendants' behalf with the United States Government for the rescission of said contract, and shall further find that the said contract of purchase was finally rescinded by the United States Government, then the plaintiff is entitled to recover in this action a verdict against the defendants for an amount equal to one-third of the amount of the purchase price of said pipe.

*Second.*—The court instructs the jury that if the jury find a verdict in favor of the plaintiff they may, in their discre-

tion, allow interest at the rate of six per centum per annum on the amount of money which they may find to be payable to the defendants to the plaintiff accounting from the date that they shall find that said money ought to have been paid by the defendants to the plaintiff.

The defendants' prayers were as follows:

*First.*—There is no evidence in the case legally sufficient to entitle the plaintiff to recover and the verdict must be for the defendants.

*Second.*—The alleged contract testified to by plaintiff is contrary to public policy and hence unenforceable, and therefore the verdict must be for the defendants.

*Third.*—If the jury find from the evidence that the services which the plaintiff undertook to render the defendants included in part the bringing of personal or political influence upon officers or agents of the United States Government in order to induce their effecting or consenting to a release of defendants from the obligation of a certain contract entered into between defendants and said Government, then they are instructed that such a contract is contrary to public policy, and, therefore, unenforceable, and that, therefore, the verdict must be for the defendants.

*Prayer* 3½.—Unless the jury find that the defendants did, in fact, agree to pay plaintiff a percentage equal to 33⅓% of any amounts recovered by or released to defendants, then inasmuch as the plaintiff's suit is based upon an alleged express contract to that effect, the verdict under the pleadings must be for the defendants.

*Prayer* 3B.—The burden is upon the plaintiff to establish by a preponderance of evidence the making of the alleged contract for 33½% testified to by him, and unless the jury shall find from the evidence that the plaintiff has so established by preponderance of proof the making of such contract, then they cannot find that any such contract was in fact made between the parties.

*Fourth.*—There is no evidence to the case legally sufficient to prove that the plaintiff is entitled to any compensation whatever from defendants in connection with or because of the sum of $1,200 shown by the evidence to have been actually refunded by the United States Government to defendants, and the jury in arriving at their verdict are not to make any allowance to the plaintiff because or by reason of such refund of said $1,200.

*Fifth.*—If the jury find from the evidence that at the time of plaintiff's employment by defendants, plaintiff offered to render his services without charge, and that defendant, Isaac Frenkil, stated that he would not let plaintiff act without any compensation, and promised to pay him as much as $100, and that no other agreement for compensation was at any time made between plaintiff and defendants, then their verdict can be only for the sum of $100, with interest in their discretion, and if they further find that the $50 admitted by plaintiff to have been received by him, was a payment on account of his said services and was not, in fact, to reimburse or pay plaintiff his expenses to Washington, and that plaintiff never in fact did go to Washington on defendants' behalf, then the jury shall credit the said $50 on said sum of $100 and interest.

*Sixth.*—If the jury find from the evidence that the defendants made no agreement with the plaintiff for the payment to plaintiff of any specific sum or any specific percentage, then their verdict must be only for such amount as they may find from the evidence represents the fair and reasonable value of any services they may find from the evidence the plaintiff rendered the defendants.

*Seventh.*—If the jury shall find from the evidence that the $50 admitted by plaintiff to have been paid him by defendants was not in fact paid to or received by plaintiff as reimbursement or payment of his expenses to Washington, but was paid to and received by plaintiff as payment in part for his services to defendants, and that, at the time of said payment, plaintiff did not claim or give defendants to under-

stand that he, the plaintiff, was entitled to $33\frac{1}{3}\%$ of any sums recovered by or released to defendants as now insisted by plaintiff, then they are instructed that the plaintiff can in no circumstances recover from defendants a greater sum than they may find to be the reasonable and fair value of his services, less said payment of $50 admitted to have been already received.

*Eighth.*—If the jury find from the evidence that the only agreement which defendants made with plaintiff for the payment of any specific sum was that defendants were to pay him $100, then even though they find that plaintiff thereafter at request of defendants rendered them other services, they are instructed that the plaintiff can recover from defendants only such sum, if any, as they may find to be the fair and reasonable value of such time as plaintiff expended and such services as he rendered in the effort to aid defendants as aforesaid.

*Ninth.*—If the jury find from the evidence that the item of $1,200 referred to in the testimony was not included in the alleged agreement for compensation to the plaintiff, then the jury cannot take into account in arriving at their verdict the fact that defendants did recover said $1,200 or allow plaintiff any compensation in connection with such item.

*Tenth.*—Unless the jury find from the evidence that defendants expressly agreed with plaintiff that, in event of cancellation of the contract referred to in the evidence, defendants would pay plaintiff $33\frac{1}{3}\%$ of any amount recovered by or refunded or released to defendants, they are instructed that they can find for the plaintiff a verdict only for such sum as they may find represents the fair and reasonable value of any services rendered by plaintiff to defendants, and in determining the value of such services they cannot take into account any personal influence which they may find the plaintiff used with the representatives of the Government.

*Eleventh.*—Unless the jury find that the defendants expressly agreed to pay plaintiff $33\frac{1}{3}\%$ of any moneys recovered by or refunded or released to defendants as result of cancella-

tion of the contract referred to in the evidence, they can allow plaintiff only such a sum as represents the fair and reasonable value of the plaintiff's services, and in estimating said value they are to take into account how far the plaintiff's services contributed to the cancellation of the contract and how far this was due to defendants' own efforts and the justice and merits of defendants' claim that the contract should be rescinded.

*Twelfth.*—If the jury find from the evidence that in order to induce Captain Palmer to advise a rehearing of defendants' claim plaintiff urged political considerations, and shall further find that plaintiff was in fact the son of a man at that time holding a prominent political position in the New York municipal administration; and if they shall further find that Captain Palmer was in fact influenced by such considerations and for that reason took up the question again and advised a rehearing then they are instructed that the plaintiff is not entitled to recover in this action.

*Thirteenth.*—If the jury find from the evidence that no agreements for any definite sum or percentage as plaintiff's compensation was at any time agreed on between him and defendants, and that hence the plaintiff is entitled to recover the fair and reasonable value of his services, then they are instructed that, in estimating said value, they are not to take into account any personal influence or solicitation which they may find plaintiff brought to bear upon the representatives of the army supply base, but merely the time expended by plaintiff, the advice and assistance he gave defendants as to the preparation and presentation of their case, and the value and effect of any arguments or representations made by plaintiff to said representatives of the army supply base, limited solely to the merits or justice of defendants' contention.

*Fourteenth.*—The jury are instructed that the representatives of the army supply base were not legally entitled to refuse to investigate defendants' complaint merely because they did not like defendant Isaac Frenkil, or resented his manner or talking or criticism of the action of the quarter-

master's department in selling defendants such pipe, and that in arriving at the fair and reasonable value of such services as plaintiff rendered (if, under other instructions of the court they award plaintiff such value), they are not to take into account any alleged service in persuading said army representatives to agree to such further investigation except insofar as said persuasion consisted solely in presenting new facts or new arguments to said army officers which defendants themselves had not hitherto presented. Such elements as personal influence or wilingness of said army officers to do for plaintiff what they would not have done for defendants, cannot be taken into account in estimating the value of plaintiff's services.

*Fifteenth.*—If the jury find that plaintiff is entitled to the fair and reasonable value of his services as set forth in other prayers of defendants, then they are instructed that, in estimating said value, they are to take into account the extent to which defendants' contention was a just and well founded one and the effect upon the ultimate result of defendants' own efforts in urging their said contention, bringing to the attention of the army representatives a sample of the pipe in controversy, procuring affidavits and pressing by personal letters or representatives their demand upon said army representatives and, if they find that the result was due in part to the intrinsic justice of defendants' case and to said efforts of defendants, themselves, then they shall allow to the plaintiff only such sum as they may find represents the fair and reasonable value of plaintiff's time and efforts and the extent to which these contributed to the outcome of the matter.

Defendants' special exceptions to plaintiff's prayers were as follows:

Defendants specially except to Plaintiff's 1st Prayer, because there is no evidence in the case legally sufficient to prove (1) that "the defendants employed the plaintiff to represent them etc."; (2) that defendants agreed "that if said contract of purchase was rescinded by the U. S. Government the defendants would pay to the plaintiff for his serv-

ices in representing them a sum equal to one-third of the purchase price of said pipe" etc; (3) and because the plaintiff's own evidence shows that the alleged contract sued on was contrary to public policy and hence unenforceable.

Defendants specially except to Plaintiff's 2nd Prayer, (1) because there is no evidence in the case legally sufficient to prove " the date that they shall find that said money ought to have been paid by the defendants to the plaintiff; (2) And because the plaintiff's own evidence shows that the alleged contract sued on was contrary to public policy and hence unenforceable.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Jacob S. New* and *Randolph Barton, Jr.,* with whom was *Julius H. Wyman* on the brief, for the appellants.

*B. Harris Henderson* and *Benjamin H. McKindless,* with whom were *Adolph Schoneis* and *Derlin McKindless* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Isaac Frenkil and Samuel M. Frenkil, trading as Baltimore Plumbing and Supply Company, purchased a lot of black steel pipe at a public auction, held at Norfolk, Virginia, by the Eastern Surplus Property Control of the War Department of the United States Government for $12,241.10, making a deposit of $1,200 cash, together with a letter of credit from the National Bank of Baltimore, whereby said bank agreed to accept a ninety-day draft against said company accompanied by bill of lading covering the whole or any part of said pipe, the total of said draft not to exceed $11,041.10, the company guaranteeing the bank against loss. Thus the War Department was secured the payment of the balance, and soon thereafter shipments went forward. On inspection of the pipe shipped, it was found that it was in very bad condition and practically valueless, and unlike the sample by

which the purchase was made; whereupon appellants advised the Government authorities of the condition of the pipe and asked that they be relieved from the contract, and also notified the bank not to pay any drafts of the Government. But Captain Palmer, the Chief Commodity Officer of the Board of Eastern Surplus Property Control at Brooklyn, New York, which had jurisdiction of the matter, recommended that the sale be not cancelled because appellants had bought the pipe "as is."

Isaac Frenkil went to New York in February, 1921, for the purpose of further contesting the matter with the Board of Control. In the course of a conversation with his brother-in-law, Jacob K. Goldscheider, at his store in that city, the latter suggested that Edward G. Hagan, the appellee, might be able to assist him. Hagan was a prominent politician, a member of the Tammany organization, and was then or had been captain of his ward. An introduction followed, an agreement was reached between Frenkil and Hagan for the services of Hagan, and after some negotiations between them and Captain Palmer, the contract was cancelled and the $1,200 which Frenkil had deposited was returned to him. Whereupon Hagan demanded payment for his services on the basis of an alleged contract of $33\frac{1}{3}$ per cent. Payment being refused, suit was brought and a verdict recovered for $4,529.19. This appeal is from a judgment entered on that verdict.

There are in the record thirteen bills of exception, none of which was pressed at the argument except the last, the first twelve relating to exclusion of evidence which counsel for appellants stated "came in, or was admitted at other times or in other forms." So it will only be necessary to discuss the thirteenth, which was to the ruling of the trial court in refusing defendants' first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, twelfth, thirteenth, fourteenth and fifteenth prayers and overruling defendants' special exceptions to plaintiff's first and second prayers. The reporter is requested to set out all the prayers offered on both sides and defendants' special exceptions.

According to the testimony offered by both the plaintiff and defendants, there was an express contract between the parties for compensation to be paid by the defendants to the plaintiff in the event of the cancellation by the Government of its contract with defendants, plaintiff's contention being that it was to the thirty-three and a third per cent. of the contract price of the pipe, and defendants that it was to be one hundred dollars. The court below was therefore clearly right in refusing all prayers which sought to have submitted to the jury the finding of the value of the services as the basis for a verdict. *Townes* v. *Cheney,* 114 Md. 362; *Miller* v. *Mantik,* 116 Md. 279; *Sherley* v. *Sherley,* 118 Md. 1. This disposes of defendants' sixth, seventh, eighth, tenth, eleventh, thirteenth, fourteenth, and fifteenth prayers.

There is no serious contention by appellant that there was error in granting plaintiff's prayers and in overruling defendants' special exceptions thereto, unless the point was well taken in the special exceptions that "the plaintiff's own evidence shows that the alleged contract sued on was contrary to public policy and hence unenforceable."

As defendants' first and second prayers, asking for a directed verdict, are based on the same theory as that contained in the above quoted objection to plaintiff's prayers, these prayers will be considered together.

Appellants, in support of their contention that the case should have been withdrawn from the jury, rely on the recent case of *Steffey* v. *Bridges,* 140 Md. 429. In that case it was held that real estate broker could not recover for services rendered a client in procuring the post office department as a tenant. There was involved a postal regulation forbidding the payment of compensation for such services, which would of itself have been sufficient ground for the decision. While it was said the case fell within the reasoning of *Providence Tool Co.* v. *Norris,* 2 Wall. 54, the decision was based on the post office regulation.

It does not follow, from anything that was decided in the *Steffey* case, that one may not lawfully employ an agent to assist him in obtaining relief from a claim of the Government

*against* him, provided the services to be rendered are of a legitimate character. Indeed the weight of authority supports the view, and government regulations recognize, that there are certain legitimate services which may be contracted for even in connection with the *procurement* of government contracts. But such services do not include the use of personal or political influence. *Trist* v. *Child,* 21 Wall, 441; *Wright* v. *Tebbits,* 91 U. S. 252; *Stanton* v. *Embrey,* 93 U. S. 548; 13 *C. J.,* pages 427-433, secs. 366-369; *Greenhood, Public Policy,* pages 367, 368; *Noble* v. *Mead-Morrison Mfg. Co.,* 237 Mass. 5.

We are unable to say as a matter of law that the undisputed evidence shows that the contract sued on was contrary to public policy and unenforceable. It follows that there was no error in granting plaintiff's first and second prayers, and in overruling defendants' special exceptions, and in refusing defendants' first and second prayers. But there is evidence in the record from which the jury might have found that the service which appellee was expected to render was through the use of political influence, and the defendant was entitled to have that proposition submitted to the jury. Defendants' third prayer was a correct statement of the proposition and the refusal of that prayer was prejudicial error.

Defendants' fifth prayer presents a correct proposition of law and is supported by evidence; but it is entirely inconsistent with defendants' third and one-half prayer, which was granted.

The fifth should have been granted and the third and one-half refused. But appellants are not in a position to take advantage of these errors.

Defendants' fourth prayer was properly refused, as there was evidence legally sufficient to prove that the $1,200 refunded by the Government was included in the sum on which the percentage of compensation was to be calculated. But there was also evidence to the contrary, and therefore it was prejudicial error to refuse defendants' ninth prayer.

There was no error in refusing defendants' twelfth prayer. It improperly segregates a single fact. Besides, all that is

properly in the prayer is covered by the third prayer, which should have been granted.

For the errors in refusing defendants' third and ninth prayers, the judgment must be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new trial, with costs to appellants.*