64

## WICKWIRE v. MARTIN.
### No. 708.

Circuit Court of Appeals, Tenth Circuit.
Jan. 10, 1933.

Rehearing Denied Feb. 10, 1933.

Edward J. Fleming, of Tulsa, Okl. (Arthur M. Wickwire, of New York City, on the brief), for appellant.

Villard Martin, of Tulsa, Okl. (Geo. S. Ramsey, Edgar A. deMeules, and Garrett Logan, all of Tulsa, Okl., on the brief), for appellees.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

The appellant, a New York lawyer, filed two claims for legal services rendered to the Monarch Royalty Corporation, then in receivership. The first was for services rendered prior to the appointment of the receiver, alleged to be of the value of $3,000, upon which $500 had been paid. The second was for $500 for services rendered after the appointment of the receiver; the claims were so separated by the direction of the court. The claims and the objections of the receiver to their allowance were referred to a Special Master, who recommended their disallowance. The trial court approved, and this appeal follows.

■ The evidence disclosed that the Attorney General of the State of New York had instituted a suit to enjoin the sale of stock of the corporation. Two brokerage firms were joined as defendants, and a temporary restraining order was issued. The corporation was represented by its general counsel in Tulsa, and by two New York counsel. One of the defendant brokerage firms was represented by appellant. The restraining order was dissolved, and appellant was paid a fee of $2,000 by his then client. Thereupon the corporation employed appellant to assist its other counsel in an effort to induce the Attorney General to discontinue the litigation. The appellant familiarized himself with those aspects of the case with which he was not already familiar by virtue of his former employment, and had a number of conferences with the Deputy Attorney General, in which it was proposed to make certain changes in the board of directors, and in the corporation's methods of doing business, if the Attorney General would discontinue the litigation. The Deputy Attorney General displayed a receptive attitude toward the proposal, but first desired to be furnished with certain data relative to the value of the corporate properties. While awaiting for that data, the corporation proposed that in order to be relieved of the litigation promptly, its properties be transferred to a new company, and that a permanent injunction might be issued against the corporation. Appellant presented the proposed plan of reorganization to the Attorney General who acquiesced therein. Before a formal stipulation could be executed, a receiver was appointed for the corporation, and the negotiations terminated. Appellant testified that his work fell into two distinct phases, the first phase being that part which had to do with an effort to induce the Attorney General to dismiss the injunction suit, and the second phase having to do with the consent of the Attorney General to the proposed reorganization. Appellant testified that when he was originally retained, only the first phase was in contemplation; and that he told the president of the corporation who retained him,

"that for such services I thought I should receive not less than $2,500.00; and I understood from the fact that he proceeded, that this was satisfactory to him." He was paid $500, prior to receivership, by the corporation. Appellant testified that his services on the first phase were conservatively worth $2,500, and his services on the second phase amply worth $1,000. He also introduced evidence of an expert witness that all the services rendered "were reasonably worth at least $3,500, and a higher charge would have been justified."

The first claim of appellant, for services rendered prior to the receivership, recites that the corporation was indebted to him in the sum of $2,500; that the consideration for said claim was legal services "of the value of $2,500"; that the total amount of the services rendered prior to the receivership was $3,000, upon which $500 had been paid. The second claim is for legal services rendered after the receivership "of the value of $500."

The appellant now contends that $2,000 of his first claim is predicated upon an express contract. The language of the claim is to the contrary. There is not a word in the claim from which an inference can be drawn that appellant was declaring upon an express contract. Not only that, but the claim uses language which is appropriate only to a declaration on quantum meruit. The claim distinctly states that its consideration is the rendition of legal services "of the value of $2,-500." Still further, the position of the appellant now is that his first claim embraces two items, to wit, an unpaid balance of $2,-000 of an express contract to pay $2,500 for the first "phase" of his work; and $500, or half the reasonable value of the second "phase" of his work, which he concedes is in quantum meruit. Yet these claims, one on an express contract for $2,500, and one on a quantum meruit for $500, are embraced in one claim, and the only difference in the statement of the two distinct claims is that the services now claimed to be rendered under an express contract, are alleged to be "of the value of $2,500," while no such language is used as to the $500 which he now claims to be upon the quantum meruit.

While there appears to be no room for construction as to the intendment of the pleading, it is of interest to observe that appellant, at the trial, considered his claim as sounding in quantum meruit. Appellant himself testified that the reasonable value of the services rendered under the first phase was $2,500; and he introduced the evidence of an expert witness, who testified to but one thing, and that was, the reasonable value of appellant's services. In an exception filed to the Master's report, the statement is made that the Master's "estimate as to the value of the services is immaterial where there is an express contract." If there was an express contract, the value of the services is, of course, immaterial. But if appellant is suing on an express contract, what is the point of the allegation in the claim as to the value of the services, and of the proof offered by appellant in support of that allegation? We see no escape from the conclusion of the Master and the trial court, that the claim is bottomed and the case tried before the Master, upon a quantum meruit. This being true, the appellant may not shift his base, and now recover on an express contract not mentioned in the pleadings. New York, L. E. & W. Railroad Co. v. Estill, 147 U. S. 591, 13 S. Ct. 444, 37 L. Ed. 292; Osgoodby v. Talmadge (C. C. A. 2) 45 F.(2d) 696; United States v. Kettenbach (C. C. A. 9) 208 F. 209; Illinois Cent. R. Co. v. Egan (C. C. A. 8) 203 F. 937; Hatcher v. Northwestern Nat. Ins. Co. (C. C. A. 8) 184 F. 23; Lesser Cotton Co. v. St. Louis, I. M. & S. R. Co. (C. C. A. 8) 114 F. 133.

■■ It is very doubtful whether any exception was taken to the finding of the Master that the services rendered were worth no more than $500; the exceptions strike chiefly at the failure of the Master to find an express contract, and an exception directed at the finding of reasonable value would be inconsistent with the new hold, taken in the exceptions, that there was an express contract. But if there be such an exception, it cannot be sustained. We can see no justification for the attempt of appellant to increase the compensation, which he now says was agreed upon, by dividing this work into two phases. The Attorney General had brought but one suit, with but one object, the prevention of sale of the corporation's securities in New York. The single object of appellant's employment was to make peace with the Attorney General. There was a change in the plan of battle, but the objective remained the same. It will not do for a lawyer, serving for an agreed fee as appellant now contends he was, to claim additional compensation because the plan of achieving the end sought is changed from time to time. But treating the suit as one in quantum meruit, as we think it must be, the question of one or two "phases" becomes immaterial.

The question then is one of fact. Findings of fact, made by a Master and approved by the trial court, cannot lightly be set aside. The Master and the trial court are themselves familiar with the value of legal services, and they are not bound by the testimony of any expert as to the value of such services. An examination of the record indicates that appellant was employed after he was, or should have been, generally familiar with the litigation. The corporation was represented by three other counsel; appellant's services consisted of preparing for and holding conferences with the Attorney General looking toward a settlement of the case. We are not disposed to set aside the finding of the Master and the trial court upon this question of fact.

While we are entirely satisfied that the claim was filed and tried upon the basis of a quantum meruit, it may be noted that appellant's own evidence as to an express contract is extremely indefinite and unsatisfactory. He testified that he said "I thought I should receive not less than $2,500." He does not claim that there was any express assent to this expression of opinion. On the face of it, it appears to be no more than a general expression of willingness to enter into a bargain, a preliminary step to negotiations which did not ripen into a contract. Williston on Contracts, vol. I, § 27. It would require great liberality with the meaning of words to make out of these an express agreement to pay $2,500, no more and no less, for services to be rendered in the future, the amount of which could not at that time be estimated.

The second claim falls for these reasons, and for the additional reason that the only supporting evidence in the record is appellant's statement that he "attended to a few details" after the receivership; a general statement from which no estimate of value can be drawn.

The judgment is affirmed.