## UNITED STATES POTASH CO. v. McNUTT.

No. 893.

Circuit Court of Appeals, Tenth Circuit.

March 30, 1934.

rendered between January 1, 1927, and October 30, 1930. Sixty-four reasons are advanced, by as many assignments of error, why the judgment should be reversed.

1. The Pleadings. The complaint is on the common count in indebitatus assumpsit; it alleges that, at the special instance and request of defendant, McNutt rendered valuable services to the defendant from January 1, 1927, until October 30, 1930, as a geologist, mining engineer, technical expert and business adviser; that such services were accepted by defendant, and were of the reasonable value of $400,000. A bill of particulars alleged that Snowden and Shannon were the agents of defendant who requested such services, in July and November, 1926, while the corporation defendant was in process of formation; that such requests were renewed from time to time until late in the year 1930.

In its answer, defendant admitted that plaintiff did render services during the period in suit, but alleged that such work was done in pursuance of an agreement made in July, 1926, between Snowden and his associates on the one hand and McNutt on the other, that McNutt should receive 10 per cent. of the stock of the corporation then contemplated for all of such services. That the corporation—the defendant—was later formed; that its Board of Directors, with full knowledge of the July, 1926, agreement, recognized and accepted such agreement, accepted plaintiff's services thereunder, and has issued to plaintiff 10 per cent. of its stock as agreed, which plaintiff retains, and which was and is payment in full for the services sued for.

The reply was a general denial.

2. The Evidence. The facts, in their aspect most favorable to appellee, are:

McNutt, a geologist of learning and experience and a business man of skill and acumen, had had satisfactory business relations for some time with Snowden and McSweeney who represented a group of eastern investors; McNutt had located and developed oil territory with moneys advanced by the Snowden group, sharing with them in the profits of the ventures. In 1925 McNutt discovered a potash deposit of great value in New Mexico; he submitted his find to Shannon, a western representative of the Snowden group, and was told to go ahead with the necessary work of blocking out the acreage and core-drilling at their expense, and was promised that satisfactory arrangements would later be made to compensate him for his services. Federal permits for a

For opinion on allowance of interest and taxation of costs, see 70 F.(2d) 1003.

Gurney E. Newlin, of Los Angeles, Cal. (Paul Speer, of New York City, and J. D. Atwood and L. O. Fullen, both of Roswell, N. M., on the brief), for appellant.

Carl A. Hatch, of Clovis, N. M., and James E. Taylor, of Kansas City, Mo. (James A. Reed, of Kansas City, Mo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

Appellee recovered a judgment upon a verdict of a jury for $238,666.66 for services

128

block of acreage were procured by McNutt, and the core-drilling demonstrated the existence of a large bed of potash. McNutt went to New York in July, 1926, to arrange for his compensation and to determine upon plans for further development.

McNutt and Shannon are the only living witnesses to what occurred at that conference. Both testified that it was agreed that a corporation—defendant—should be formed and development continued by that corporation; that the Snowden group would contribute $100,000 in cash to the corporate capital, and that McNutt should have 10 per cent. of the issued stock. The corporation was later formed, its $100,000 capital paid in cash, and McNutt received and retained 10 per cent. of the stock. Both testified that McNutt was to continue his services to the corporation until the project was proven or condemned, and that an agreement was concluded that day for the amount of compensation he should receive. But there the way divides. McNutt testified that the stock was in payment for the work he had already done on the project, and for nothing else. Shannon testified that the stock was in payment for past services but also that, in consideration thereof, McNutt was "to continue in the project the same as he had in the past." McNutt testified, as to services to be performed after the corporation was organized, that Snowden offered him a salary, which McNutt declined; McNutt then offered to continue to put up his time against their money; that since it appeared that more than the original $100,000 would probably necessarily be expended before the project was either proven or condemned, he would accept for future services 10 per cent. of such additional advancements, conditioned upon their being repaid. To this proposal, Mr. Snowden replied, "that was all right, that was satisfactory." Snowden made no present agreement to advance more funds; but later $606,539.80 was so advanced and repaid.

McNutt continued on, rendering valuable service to the company; he testified that in May, 1929, at a directors' meeting, he brought up the question of this 10 per cent. of additional advancements and asked for a note therefor, as the Snowden associates had been given notes for such advancements. Whereupon McSweeney, one of the original associates and President of the corporation, disclaimed any knowledge of such an understanding; Snowden said he did not understand that such was the agreement he and McNutt had in July, 1926, but that McNutt could rest assured that "the matter would be adjusted in a satisfactory manner." With that assurance, the matter was presently dropped, and McNutt continued on. All others present at that meeting deny in toto that any such proceedings were had, and this conflict in the testimony was not submitted to the jury.

On September 23, 1930, appellant's stockholders sold half their stock to the Pacific Coast Borax Company in consideration of $2,000,000, out of which sum the sellers agreed to discharge most of the corporate debts; the buyer agreed to develop and operate the corporation properties, to assist in financing such development, and to market its products, all upon terms satisfactory to the corporation. The success of the venture having been demonstrated by the sale, and the advancements repaid, McNutt demanded in writing his 10 per cent. of such advancements—"this amount is roughly $60,000"—and reiterated his contention that by his agreement of July, 1926, he was entitled to such sum. He closed his demand with the statement that if he was mistaken as to that agreement, "then I contend that I am entitled to be paid for the reasonable value of my services." Appellant refused payment of any sum on the ground that the stock issued to McNutt was in full payment for all services rendered both before and after the date of its issuance. This action followed.

■ 3. The Main Issue. From the above, it is clear that the one overshadowing issue, in the pleadings and the proof, is as to what agreement was made in July, 1926. Both parties plead that agreement; both parties introduced proof of it. If, as Shannon testified, McNutt was to receive 500 shares of stock for past and future services, the defense pleaded has been established, and McNutt is entitled to nothing. If, as McNutt testified, he was to receive in addition 10 per cent. of moneys later advanced by the associates and repaid, then he is entitled to recover $60,653.98. That issue is all there is to this lawsuit. The jury heard the testimony and believed McNutt. Under this record, and his own testimony, which the jury found to be true, he was entitled to $60,653.98 and no more.

Appellee advances several reasons why he should be entitled to $178,000 more than he agreed to do the work for. We have examined them all, and find them to be without substance.

■ Appellee claims that because he elected to sue in indebitatus assumpsit instead of up-

on the special agreement he testifies he made, he should not be held to his agreement. While a recovery may be had upon the common counts for services fully performed under a special contract, both reason and authority limit the recovery to the amount which the parties agreed should be paid for the services. Where one has agreed to perform services for a stipulated sum, he should not be permitted to evade his contract by any device of pleading. In Dermott v. Jones, 2 Wall. 1, 9, 17 L. Ed. 762, the Supreme Court held that in an action on the common counts, the plaintiff "must produce the contract upon the trial, and it will be applied as far as it can be traced," and that:

"While a special contract remains executory the plaintiff must sue upon it. When it has been fully executed according to its terms, and nothing remains to be done but the payment of the price, he may sue on the contract, or in indebitatus assumpsit, and rely upon the common counts. In either case the contract will determine the rights of the parties."[1]

The contention is then made that there never was a contract because a misunderstanding arose in 1929 as to the terms orally agreed upon three years before. Where, as here, unambiguous language is used in an offer, and it is unconditionally and unequivocally accepted, a contract results. Its obligation is not discharged by a subsequent disagreement. Contracts are made by what parties say, and not what they intend to say. If one were permitted to avoid a bargain, fairly and clearly made, by the statement that he meant one thing when he said another, the obligation of contracts would be a myth. National Bank of Metropolis v. Kennedy, 17 Wall. 19, 21 L. Ed. 554; Motter v. Patterson (C. C. A. 10) 68 F.(2d) 252, 258; Milliken-Tomlinson Co. v. American Sugar Refining Co. (C. C. A. 1) 9 F.(2d) 809; Star-Chronicle Pub. Co. v. New York Evening Post (C. C. A. 2) 256 F. 435; Hotchkiss

v. National City Bank (D. C.) 200 F. 287, 293, affirmed (C. C. A.) 201 F. 664, affirmed 231 U. S. 50, 34 S. Ct. 20, 58 L. Ed. 115; O'Donnell v. Town of Clinton, 145 Mass. 461, 14 N. E. 747, 751; Clark v. Stetson, 115 Me. 72, 97 A. 273; Restatement, Contracts, § 20; Williston on Contracts, § 94. Appellee places his reliance, in this connection, upon those cases where a meeting of the minds was aborted by the use of expressions with two or more usual meanings, or where a written offer was altered by forgery before acceptance. Turner v. Webster, 24 Kan. 38, 36 Am. Rep. 251, distinguished on this ground in Brown v. Quinton, 86 Kan. 658, 122 P. 116, Ann. Cas. 1913C, 392; Vickery v. Ritchie, 202 Mass. 247, 88 N. E. 835, 26 L. R. A. (N. S.) 810. But there is no ambiguity in the words here employed, and such cases have no application.

Nor does it defeat the contract that Snowden did not presently agree to advance further moneys to the project. When such moneys were in fact later advanced, the promise to pay for services then attached, and the element of mutuality was supplied. General Paint Corporation v. Kramer (C. C. A. 10) 57 F.(2d) 698, certiorari denied 287 U. S. 605, 53 S. Ct. 10, 77 L. Ed. 526; Scott v. J. F. Duthie & Co., 125 Wash. 470, 216 P. 853, 28 A. L. R. 328; Sheffield Furnace Co. v. Hull Coal & Coke Co., 101 Ala. 446, 14 So. 672; McKenzie v. Stewart, 196 Ala. 241, 72 So. 109; Johnson v. Homestead-Iron Dyke Mines Co., 98 Or. 318, 193 P. 1036; Livingston v. Blair, 104 Okl. 238, 231 P. 82; Roberts v. Harmount Tie & Lumber Co. (Mo. App.) 264 S. W. 448; Paragon Oil Co. v. A. B. Hughes & Sons, 193 Ky. 532, 236 S. W. 963; Burke & Farrar v. Campbell, 128 Wash. 646, 224 P. 9; Williston on Contracts, § 106.

It is then argued that the July, 1926, contract was rescinded by mutual agreement in March, 1929, when the misunderstanding arose. Assuming that McNutt's testimony

[1] See, also, Bank of Columbia v. Patterson, 7 Cranch (11 U. S.) 299, 3 L. Ed. 351; Chesapeake & O. Canal Co. v. Knapp, 9 Pet. (34 U. S.) 541, 565, 9 L. Ed. 222; Ogden v. Ruhm (C. C. A. 2) 7 F.(2d) 1007, certiorari denied 269 U. S. 571, 46 S. Ct. 26, 70 L. Ed. 417; McCurley v. National Savings & Trust Co., 49 App. D. C. 10, 258 F. 154; H. G. Holloway & Bro. v. White-Dunham Shoe Co. (C. C. A.) 151 F. 216, 10 L. R. A. (N. S.) 704; Marshall v. Jones, 11 Me. 54, 25 Am. Dec. 260; Frenkil v. Hagan, 146 Md. 94, 125 A. 909;

Confer Bros. v. Currier, 164 Minn. 207, 204 N. W. 929, 931; Reifschneider v. Beck, 148 Mo. App. 725, 129 S. W. 232; Burgess v. Helm, 24 Nev. 242, 51 P. 1025; Cunningham v. Springer, 13 N. M. 259, 82 P. 232, affirmed 204 U. S. 647, 27 S. Ct. 301, 51 L. Ed. 662, 9 Ann. Cas. 897; Ton Toy v. John Gong, 87 Or. 454, 170 P. 936; Sinnock v. Zimmerman, 132 Or. 137, 284 P. 838; Edward Thompson Co. v. Kollmeyer, 46 Ind. App. 400, 92 N. E. 660; Williston on Contracts, § 1459.

as to the 1929 meeting is sufficiently definite to establish a rescission by mutual agreement, it does not avail appellee, for his testimony was flatly contradicted by every other person at that meeting, and the court did not submit this issue of fact to the jury. Nor can error be predicated upon such failure to submit the question; no request to submit that issue was made by either party; appellant does not assign any such error, and there is no cross-appeal.

■ As to a rescission in invitum. Where one party to an executory contract unqualifiedly repudiates, the other party may accept the repudiation, decline to render further services, and sue in quantum meruit for services already rendered. Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; United States v. Behan, 110 U. S. 338, 4 S. Ct. 81, 28 L. Ed. 168; Operators' Oil Co. v. Barbre (C. C. A. 10) 65 F.(2d) 857; Bu-Vi-Bar Petroleum Corporation v. Krow (C. C. A. 10) 40 F.(2d) 488, 69 A. L. R. 1295; Thane Lumber Co. v. J. L. Metz Furniture Co. (C. C. A. 8) 12 F.(2d) 701; Moore v. Security Trust & Life Ins. Co. (C. C. A. 8) 168 F. 496; Hoggson Bros. v. First Nat. Bank (C. C. A. 8) 231 F. 869; Fitzgerald v. Allen, 128 Mass. 232; Major v. Pine, 3 Bing. 285; Williston on Contracts, § 1296.[2] But McNutt's testimony that appellant repudiated in 1929 was stoutly denied by other witnesses, and this issue of fact was not submitted to the jury. Furthermore, McNutt testified that after the assurances given by Snowden at that meeting, he continued to render the services he had agreed to render, and he now sues for services rendered after that day. It thus conclusively appears, by McNutt's own testimony, that if there were a repudiation by appellant, McNutt did not accept it but continued to perform. Before one may rely upon a repudiation of an executory contract, he must accept it as such and treat the contract as at an end. If he fails to do that, "he keeps the contract alive for the benefit of the other party as well as his own." Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 784, 44 L. Ed. 953; Smoot's Case, 15 Wall. 36, 21 L. Ed. 107; Dingley v. Oler, 117 U. S. 490, 503, 6 S. Ct. 850, 29 L. Ed. 984; Foss-Schneider Brewing Co. v. Bullock (C. C. A. 6) 59 F. 83; Hettrick Mfg. Co. v Waxahachie Cotton Mills (C. C. A. 6) 1 F.(2d) 913, 919; Hennessy v. Bacon, 137 U. S. 78, 84, 11 S. Ct. 17, 34 L. Ed. 605. The services here having been fully performed when the action was brought, the cases that permit of recovery on quantum meruit where there has been but part performance of the services contracted for, are not in point. Nor are we concerned with cases like Humbert v. Chopy (D. C. Colo.) 216 F. 549, where services are to be paid for in something else than money, and where the employer has disabled himself from compensating the employee as agreed.

■ Nor is it necessary, when the suit is on the common counts, that defendant specially plead an express contract. Notwithstanding the suit is in quantum meruit, if there is a special contract, the plaintiff "must produce the contract upon the trial." Dermott v. Jones, 2 Wall. 1, 17 L. Ed. 762. His recovery is limited, not by way of defense, but by his own agreement, brought forward by himself upon the trial. Under the liberal rule of pleading established by the cases heretofore cited, one may sue in quantum meruit despite the fact that the work was done under a special contract; but, as may be seen from the same cases, recovery must rest on the facts as they are. If plaintiff has agreed to perform services for a stipulated sum, he must establish that fact as a part of his case, notwithstanding the form of the action.[3] Nor is a defendant estopped, if the issue of fact be decided against it, to assert that the recovery be limited by the agreement which the jury finds to exist. While a litigant may not try his case on one theory and shift to another on appeal [Wickwire v. Martin (C. C. A. 10) 63 F.(2d) 64], appellant's theory in this case, from its first answer to its last brief, is that the services were performed under an express contract. Upon this point, the parties are in accord,

---

[2] This is akin to the familiar rule that where one party has substantially breached his contract, the other ordinarily has his option of rescinding or suing for the breach. In Ankeny v. Clark, 148 U. S. 345, 13 S. Ct. 617, 37 L. Ed. 475, and Smiley v. Barker (C. C. A. 8) 83 F. 684, the seller failed to give good title to the thing sold; the buyer was held to have the right to rescind and recover the price paid. In Hoggson Bros. v. First Nat. Bank (C. C. A. 8) 231 F. 869, it is emphasized that a repudiation must be absolute and unqualified before a rescission may follow.

[3] Viles v. Kennebec Lumber Co., 118 Me. 148, 106 A. 431; Little v. Brown, 36 Ariz. 194, 283 P. 924; Jewett v. Weston, 11 Me. 346; Phipps v. Mahon, 141 Mass. 471, 5 N. E. 835; Stewart v. Thayer, 170 Mass. 560, 49 N. E. 1020; Figland v. Jones, 39 S. D. 40, 162 N. W. 738; American Surety Co. v. Fruin-Bambrick Const. Co., 182 Mo. App. 667, 166 S. W. 333, 335.

although they differ as to the terms. A defendant does not, by putting on a witness to testify to the terms of that agreement, estop itself from relying on a fact not in dispute, that there was an agreement. The law does not say to a suitor that he testifies to his recollection of an oral contract at his peril; that if the jury decides against him, the other side is released from a contract he agrees he made.[4]

Appellee's case, established by his own testimony, discloses a valid contract to perform these services for $60,653.98. Appellant requested the court to charge the jury that if they believed McNutt's testimony as to the 1926 contract, their verdict should be for such sum of $60,653.98. The court denied the request, and, on the contrary, charged that such agreement would not limit the amount of recovery. In this there was error.

4. Other Errors Assigned. The trial court read to the jury appellant's answer, which clearly alleged that McNutt had agreed, in July, 1926, to accept 500 shares of stock for all his services, and that he was paid in full by the issuance of such stock. The jury were advised that appellee denied any such agreement was made. The jury were then charged that such issue was one of the important issues to be determined, and that:

"If you believe from the evidence that there was such a contract as claimed by the defendant, it will bar recovery of any sum whatever in this case by the plaintiff, and your verdict will be for the defendant."

In defining a contract as a meeting of the minds of the parties, the learned trial judge used the expressions "if their minds and understanding did not meet" and "if the mind of Mr. Snowden and Mr. McNutt met and each understood the other," which are inept, particularly when there was evidence of a misunderstanding three years later. Appellant tendered an instruction which stated the familiar law of the formation of a contract in the more conventional way. We are not, however, disposed to reverse the cause on account of this slip for several reasons. First, there are five printed pages of objections to this paragraph of the charge, but the court's attention was not called to the unfortunate use of the word "understanding."[5] Again, we are not persuaded that any prejudice resulted. The average juryman knows, without being told, that if McNutt agreed to do this work for 500 shares of stock, as Shannon testified, he was paid in full when he received the stock. There would never be an end to litigation if reversals followed every slip of the tongue in hotly contested protracted trials. When such slips do occur, counsel must directly call the court's attention thereto.

Error is assigned on the exclusion of testimony of what Snowden told the directors about the July, 1926, agreement. Such assignments are neither specified in the briefs nor argued, and need not be considered. City and County of Denver v. Denver Tramway Corp. (C. C. A. 8) 23 F.(2d) 287, certiorari denied 278 U. S. 616, 49 S. Ct. 20, 73 L. Ed. 539; Travelers' Ins. Co. v. Bancroft (C. C. A. 10) 65 F.(2d) 963, certiorari denied 54 S. Ct. 103, 78 L. Ed. ——. If there had been an issue of corporate adoption of the Snowden-McNutt agreement, such evidence might have been admissible for a limited purpose. Appellant pleaded a corporate adoption of that agreement, and all parties apparently assume what is undoubtedly the fact, that the corporation was bound by that agreement, whatever it was. Neither side asked the court to submit any such question to the jury; the trial court charged the jury that the corporation was bound by such agreement, and no exception was taken thereto. The briefs here do not mention any such question. The errors assigned are, therefore, without substance.

---

4 While not entirely on the point, see General Paint Corp. v. Kramer (C. C. A. 10) 57 F.(2d) 698; Buchhalter v. Rude (C. C. A. 10) 54 F.(2d) 834 (modified as to costs, 286 U. S. 451, 52 S. Ct. 605, 76 L. Ed. 1221); Midland Savings & Loan Co. v. Tradesmen's Nat. Bank (C. C. A. 10) 57 F.(2d) 686, certiorari denied 287 U. S. 615, 53 S. Ct. 17, 77 L. Ed. 534; Henderson Tire & Rubber Co. v. Gregory et al. (C. C. A.) 16 F.(2d) 589, 593, 49 A. L. R. 1503; Bierce v. Hutchins, 205 U. S. 340, 27 S. Ct. 524, 51 L. Ed. 828; Barnsdall v. Waltemeyer (C. C. A. 8) 142 F. 415, 420; Doyle v. Hamilton Fish Corp. (C. C. A. 2) 234 F. 47, 51.

5 Twelve pages further on in the exceptions to the charge, appellant does except to the use of the word "understanding" in a later part of the charge dealing with the effect of the agreement as McNutt testified to it, a part of the charge we have found erroneous on other grounds. But when the court's attention was directed in great detail to errors in the paragraph of the charge now under consideration, no mention is made of the expressions now assigned as error.

We have examined the other assignments of error and find nothing therein requiring reversal or recitation.

There remains the important question of the disposition which should be made of the case. Nearly four years have elapsed since appellee became entitled to his pay. After a protracted and expensive trial, with lawyers and witnesses attending from afar, a qualified jury has heard the evidence on the one critical issue and determined it. Necessarily that jury believed McNutt, and under McNutt's testimony he was entitled to $60,653.98, no more and no less. If the court had charged the jury as requested by appellant, and had not charged them to disregard McNutt's agreement in arriving at a verdict, the verdict must have been for that precise sum, for there is no dispute that $606,539.80 was later advanced and repaid, and McNutt testified his pay was to be 10 per cent. of that sum.

After one fair trial on the controlling issue of the terms of the 1926 agreement, we are reluctant to send the cause back for another trial of the same issue, with its attendant delays and expense to the parties and the government. There ought to be a better way, within the limitations imposed upon us by the Seventh Amendment. The Seventh Amendment requires one jury trial and not two. If a correct verdict has been prevented by an erroneous instruction, and if a correct verdict is an inescapable conclusion from facts found by the jury, we know of no reason or rule that requires a second trial.

We are prevented, by controlling authority, from directing a judgment for the sum to which appellee is entitled. Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. But we are not barred from an order of remittitur [St. Paul F. & M. Ins. Co. v. Eldracher (C. C. A. 8) 33 F.(2d) 675, certiorari denied 280 U. S. 604, 50 S. Ct. 86, 74 L. Ed. 649] if the excess of the judgment is merely a matter of computation, and does not involve a determination of a disputed question of fact, as in Fairmount Glass Works v. Cub Fork Coal Co., 287 U. S. 474, 53 S. Ct. 252, 77 L. Ed. 439. The Seventh Amendment prohibits a court from substituting its judgment on a question of fact for that of a jury; computing 10 per cent. of $606,653.98 involves no question of judgment, and a jury need not be impaneled to make the calculation.

If appellee remits the judgment down to the amount to which he is entitled, the only error in the trial becomes harmless. Can either party reasonably object to such a disposition of the case? Certainly appellee may not, for if he wants another trial, he may have it. Appellant is in but little better stead; it invited the trial court, by the requested charge, to direct the jury to find against it for $60,653.98 if they believed McNutt. It renews that invitation here. By this request, it waived any objection it might have had to the jury passing on the question of veracity between McNutt and Shannon, after it had listened to the experts evaluate McNutt's service. Appellant cannot object to a result which is simply a mathematical deduction from a charge it urges should have been given. The only reason which we can see which either party might urge against such a disposition, is that one or the other might like to try his luck again with another jury—that is, have a second day in court. To that, they are not entitled.

It will therefore be ordered that the judgment be reversed, and a new trial directed, unless within 60 days from the filing of this opinion, appellee files in the office of the clerk of the trial court, a remittitur of the excess of the judgment over $60,653.98, and within ten days thereafter files with the clerk of this court a certified copy of the record showing such remittitur. If such remittitur is filed, the judgment, less the amount remitted, will be affirmed; otherwise reversed with directions to grant a new trial.

Affirmed if remitted to $60,653.98; otherwise reversed.