### Paragon Oil Company v. A. B. Hughes & Sons.

(Decided January 27, 1922.)

### Appeal from Allen Circuit Court.

1. Contracts—Unilateral Contracts.—A unilateral contract is unenforcible and there is no liability for its breach but where there is an executed consideration for a promise, compliance therewith can be exacted.
2. Damages—Breach of Contract.—Evidence examined and held to be sufficient to take the case to the jury on the question of the alleged breach of contract, for which damages were sought.
3. Damages—Instructions.—An instruction submitting to the jury an element of damages, not authorized under the contract nor warranted under the evidence, is prejudicial error.

GILLIAM & GILLIAM for appellant.

T. B. DIXON and OLIVER & DIXON far appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

The appellees filed suit in the Allen circuit court against appellant, seeking damages in the sum of $5,130.00 for the breach of a contract for the drilling of twelve oil wells. The petition is in two paragraphs, the first of which alleged the contract and its breach by appellant. By reason of the breach, damages were asked in the sum of $2,100.00 on account of the loss of twenty-one

days in operating two drilling machines, and $650.00 for wages of employes during that period. The second paragraph sought damages in the sum of $2,400.00 for loss of profits that appellees claimed they would have earned, had they been permitted to finish the contract and drill the three remaining wells.

The averments of the petition were denied, and on the trial there was a verdict and judgment for $2,000.00 in favor of appellees. The petition was based on an undated contract, written at the bottom of a contract between the same parties of May 21, 1919, under which appellant employed appellees to drill one well on the C. S. Oliver lease in Allen county, on certain terms and conditions specifically stated therein.

The original contract is not involved on this appeal as the undertakings thereunder were performed by both parties, but a reversal of the judgment is sought on the grounds: (1) that appellant's motions for a peremptory instruction to find for it should have prevailed, (2) that the instructions given to the jury did not properly state the law of the case, (3) that the verdict of the jury is not sustained by sufficient evidence and is contrary to law, and (4) error of the court in refusing to grant a new trial on the ground of newly discovered evidence.

The contract provides that:

"In consideration of the second party placing two drills on the Charlie Oliver lease near Settle, Allen county, Kentucky, the party of the first part hereby agrees to give the party of the second part twelve wells to drill, subject to the same condition set out in the foregoing contract."

The motions for a peremptory instruction raised the question of the validity of the contract, as well as that of whether the evidence was sufficient to take the case to the jury on the issue as to its breach by appellant.

It is contended by appellant that the contract was unilateral, that there was no obligation on the part of appellees to do any drilling, and, therefore, there was no consideration, supporting the promise of appellant "to give" appellees "twelve wells to drill."

Undoubtedly where a contract is lacking in mutuality it cannot be enforced and there is no liability for its breach. (Bank of Ashland v. Rouse, 142 Ky. 612; Berry v. Frisbie, 120 Ky. 337; Killbrew v. Murray, 151 Ky. 345;

Rehm-Zeiher Co. v. Walker, 156 Ky. 6; Goff v. Saxon, 174 Ky. 330.)

But mutuality means something more than undertakings on the part of the parties to the contract; it may mean mutual undertakings or an undertaking on one side and an executed or supporting consideration therefor on the other. Recognizing this principle, broadened as it has been to meet the exigencies of modern business, it seems obvious that there was a consideration for the promise on the part of appellant, "to give the party of the second part twelve wells to drill."

It may be conceded that appellees were not obliged to drill twelve wells under the contract, or to place two drills on the Oliver lease, but appellant agreed that if they would place two drills on the lease, it would give to them the right or privilege of drilling twelve wells, on the conditions and terms mentioned in the contract of May 21, 1919. The placing of the two drills—not the work of drilling—was the consideration for the promise, and after the drills were placed the consideration became an executed one. It supported the promise, compliance with which, according to the terms of the contract of May 21, 1919, appellees had the right to exact. We conclude, therefore, that the contract was not lacking in mutuality but there was a sufficient supporting consideration for the promise on the part of appellant, for the breach of which it was liable in damages.

Nor was there a deficit of necessary evidence to take the case to the jury on the alleged breach of the contract. While there was some evidence tending to show that the contract was mutually abandoned, after drilling nine wells, there was other evidence showing that appellant refused to permit appellees to drill the three remaining wells or further to perform their part of the contract, and that evidence was sufficient to take the case to the jury under all of the facts and circumstances shown to exist. It was, therefore, proper to overrule the motions for a peremptory instruction.

Considering the instructions given, it is to be observed that thereunder the jury were authorized to find for appellees such sum in damages as they might believe from the evidence would fairly represent the reasonable profits that appellees would have made, had they been permitted to drill the three remaining wells, and such further sum, if any, as the jury might believe represented

expenses for labor incurred by the appellees, not exceeding the sum of $540.00, during the delay in operations, caused by the failure of appellant to indicate a location for drilling, before the date that appellant notified appellees of its decision not to drill the other wells. On this phase of the case the jury were instructed:

"If the jury believe from the evidence that defendant refused to permit the plaintiffs to complete its contract for the drilling of the last three wells under the contract introduced in evidence, and that plaintiffs have been damaged thereby, they will find for plaintiffs, such a sum as they may believe from the evidence will fairly represent the reasonable net profit which they may believe from the evidence plaintiffs would have made, not to exceed the sum of $800.00 for each well, or $2,400.00; and if the jury believe further from the evidence that just prior to the time when it is alleged defendant refused to permit plaintiffs to drill as above outlined, plaintiffs were delayed by a failure of defendants to indicate a location, and before such refusal had been made known to plaintiffs, and that plaintiffs were compelled to keep its hands under employment, in order to prevent them from taking employment elsewhere, they will find for plaintiffs the damages, if any, which they may believe they have sustained, not to exceed $30.00 a day for eighteen days, or $540.00, and unless they so believe they will find for defendant as to this latter item."

This instruction was erroneous. The suit was based on the undated contract, the terms of the work thereunder being controlled by the contract of May 21, 1919. Under that contract appellant bound itself to pay appellees the sum of $25.00 for each twelve working hours, during any delay, "caused by not having water or fuel or casing on hand when needed." This represented liquidated damages for delays, brought about by appellant on account of failure to have water, fuel or casing on hand. That part of the instruction which permitted a recovery for delays caused by failure to indicate a location for drilling, could not have been based on the provision in question, but must have been predicated on the theory that the failure to designate a location was a breach of the contract, and by reason thereof appellees were entitled to recover such damages as ensued therefrom. The principle is sound but it is not applicable to the facts in this case.

Neither the original contract nor the memorandum agreement stipulated that the drilling should be done in any specified time or that it should be continuous. In the absence of such stipulation the performance of the obligations thereunder, without unreasonable delays, is to be considered timely, and under the facts shown to exist in this case it cannot be said that there was such a delay in indicating a location, before the date of the refusal to permit appellees to finish the work, as amounted to a breach of the contract or created a right of action for damages. Accordingly, it was not proper to submit that element of damages to the jury, and it was prejudicial because unwarranted and conceivably included in the verdict that was rendered.

As it will be necessary to have another trial of the case, we refrain from passing on the question of whether the verdict was flagrantly against the evidence, but the judgment is reversed solely on the ground that the instructions, which were otherwise correct, improperly submitted to the jury an element of damages not authorized under the evidence.

Wherefore, the judgment is reversed for proceedings not inconsistent herewith.