## Business Men's Assur. Co. of America v. Eades.

Feb. 6, 1942.

554

B. J. Bethurum for appellant.

A. M. Hall for appellee.

Opinion of the Court by Sims, Commissioner—Affirming.

The appellee, J. T. Eades, Jr., recovered judgment against the Business Men's Assurance Company (hereinafter referred to as the Company) for commissions of $1,763.91 alleged to be due him under a contract, and the Company appeals. The case was referred to the master commissioner to hear proof and determine the accounts between the parties. He found in favor of Eades in the above sum and the chancellor confirmed the report. There is but slight controversy as to the amount due appellee if he is entitled to commissions and the real issue is whether he is entitled to any commissions under the contract.

On Jan. 2, 1931, Eades entered the employment of the Company as special agent solely for the purpose of obtaining applications for life and disability insurance. On Mar. 2, 1936, he entered into a written contract with

it whereby he was employed as district supervisor for a number of counties in Kentucky for the purpose of assisting in the recruiting and training of new salesmen who might be assigned to him for that purpose by the Company.

The material parts of this contract provide that Eades shall spend with the salesmen such time as may be required by the Company's branch manager and submit reports of his training efforts when required; also, make reports each week to the branch manager of his activities. His consideration as district supervisor was a commission of seventy-five cents on each $7 worth of business procured by the new salesmen assigned to him for training during their first two years of service, and also during the time he is conducting the training program in accordance with the instructions of the Company. Failure on Eades' part to spend the specified time with the new salesmen, or to make reports as above indicated, forfeited his right to receive commissions on their production during any month the training schedule was not fulfilled or reports were not furnished. The contract further provided it might be modified at any time by mutual consent, or terminated by either party upon 30 days' written notice.

Under this contract the Company assigned three salesmen to Eades for training; two, V. B. Wiggins and C. L. McDowell, on March 2, 1936; and the third, E. H. Sawyer, on July 1st, of that year. Eades trained these salesmen as provided by the contract and received commissions on their production until Nov. 1, 1936. On Oct. 26, 1936, he received a letter from the Company stating in effect that it had decided the salesmen training plan was not a success and beginning Nov. 1, 1936, the Company would abandon it, and Eades would be relieved from all responsibility of the salesmen under him and would devote no further time to them and would discontinue his reports on their activities. After receiving this letter Eades relinquished supervision over the three salesmen and discontinued reports on them, but he continued with the Company as special agent under the contract of Jan. 2, 1931, until he resigned on Mar. 31, 1937.

Eades brought this action on his contract of March 2, 1936, to recover commissions from Nov. 1, 1936, to March 2, 1938, on the production of the two salesmen who remained with the Company the full two years, and to re-

cover commissions from Nov. 1, 1936, to Jan. 1, 1938, the date the third salesman, McDowell, severed connections with it, on his production. The Company's answer pleaded the contract was terminated by the letter of Oct. 26th, and secondly, that Eades resigned on Mar. 31, 1937. Eades' motion that the Company be required to elect which of the two alleged inconsistent defenses it would rely upon was sustained, and it elected to stand on the first defense and struck the second from its pleadings. As the proof of one of these defenses did not necessarily disprove the other, they are not inconsistent. Civil Code of Practice, Section 113; Jones v. Whitaker, 141 Ky. 484, 133 S. W. 223; Hicks v. Oak's Adm'r, 233 Ky. 27, 24 S. W. (2d) 917. However, this error of the chancellor was of no consequence for the reason that the case is governed by the contract and the letter terminating it.

It is insisted by Eades that the contract of Mar. 2, 1936, had become executed when the Company attempted to terminate it by the letter of Oct. 26th, and that an executed contract cannot be arbitrarily terminated by one of the parties. It is further insisted by him that if the contract were executory rather than an executed one, then the notice not being in the terms provided by the contract, was not sufficient to terminate it. Eades argues that this is an executed contract because he trained two of the salesmen from Mar. 2, 1936, and the third from July 1st of that year until he received the letter the latter part of October, 1936, and this entitled him to commissions on their production for two years should they remain with the Company that long.

It will be noted that the contract does not expressly state the duration of the training period but merely provides Eades is entitled to commissions during the time he is conducting the training program in accordance with the Company's instructions and during the first two years of service of such salesmen. The contract provides it can be modified by mutual consent or that it may be terminated by either party upon 30 days' written notice.

Where a contract has been fully performed by one party it cannot be terminated by the other. 12 Am. Jur., Section 414, page 994. But the parties may enter into an agreement wherein either has the right to terminate it at will and the courts will enforce such agreement, insofar as it has not been executed, as the parties have writ-

ten. Ford Motor Co. v. Alexander Motor Co., 223 Ky. 16, 2 S. W. (2d) 1031; Paragon Oil Co. v. A. B. Hughes & Sons, 193 Ky. 532, 236 S. W. 963.

Appellant Company argues this contract is not severable and can be considered only in its entirety, and as the entire contract had not been performed, it had the right to cancel same on 30 days' notice as provided in the contract. Primarily the question of whether a contract is entire or severable depends upon the intention of the parties, the objects to be attained and the common sense of the situation. 13 C. J., Section 526, p. 562, Section 539, p. 568; 17 C. J. S., Contracts, Sections 332, 344; 13 R. C. L., Section 246, p. 858; Gilmore & Co. v. W. B. Samuels & Co., 135 Ky. 706, 123 S. W. 271, 21 Ann. Cas. 611; Koppers v. Asher Coal Mining Co., 226 Ky. 492, 11 S. W. (2d) 114. As this contract related not only to the three salesmen in question but to a general training plan for any salesmen the Company might send Eades and as it provided compensation for him during the training period as well as after it was completed, it is apparent the contract was severable.

The pivotal point in this case is whether Eades had completed the training of the three salesmen when he received a letter terminating the contract. If so, the contract was executed insofar as it related to them and under the authority of Ford Motor Co. v. Alexander Motor Co., 223 Ky. 16, 2 S. W. (2d) 1031, and Paragon Oil Co. v. A. B. Hughes & Sons, 193 Ky. 532, 236 S. W. 963, the Company could not terminate it and deprive Eades of commissions on the production of the salesmen he had trained. If the training had not been completed, the contract was executory and could be terminated.

Eades testified he had trained these salesmen, and, as is pointed out in the report of the special commissioner who heard the proof, his testimony was not contradicted. Indeed, the Company did not defend on the ground the training of the salesmen had not been completed. The fact that the Company retained the three salesmen in its employ after terminating Eades' supervisory contract is quite persuasive that they had been trained to its satisfaction.

So far as the training of these three salesmen was concerned, the contract had become executed and the Company was without authority to terminate it and de-

prive Eades of the commissions he was to receive thereunder upon the business these salesmen wrote. However, the Company could terminate the executory part of the contract relative to Eades supervising the training of any future salesmen.

Complaint is made that the letter was indefinite and did not terminate the contract, but at most expressed only an intention to so do; that instead of giving the required 30 day notice it gave only five, citing 13 C. J., Sections 634, 637, pages 607, 608; 17 C. J. S., Contracts, Section 402; Oldfield v. Chevrolet Motor Co., 198 Iowa 20, 199 N. W. 161, 35 A. L. R. 889; Star-Chronicle Pub. Co. v. United Press Ass'n, 8 Cir., 204 F. 217; Standard Pub. Corp. v. Mitchell Pub. Co., 59 S. D. 552, 241 N. W. 520, and distinguishing them from Dickinson v. Gray, Ky., 8 S. W. 876, 9 S. W. 281.

However, it is not necessary to pass on the sufficiency of this notice since we have concluded the chancellor was correct in holding that the executed part of the contract could not be terminated, and since Eades accepted the notice and treated it as sufficient and ceased work under the executory part of the contract.

As the Company notified Eades on Oct. 26th of the termination of the contract, it admits the contract remained in force for the month of November, but makes the contention it paid the commissions due him for that month.

Eades testified he was not paid commissions for November while the Company's manager, Welton, testified he was. It developed on cross-examination that Welton had directed commissions paid Eades for November but did not actually know whether his directions had been carried out. The Company pleaded it had paid the commissions for November, therefore, the burden was on it to prove payment. Civil Code of Practice, Section 526; Phillips' Ex'r v. Reid, 268 Ky. 317, 104 S. W. (2d) 1093. Since Welton testified he did not know that Eades was paid for November, the Company failed to meet the burden of proof and Eades is entitled to receive commissions for that month.

It follows that the chancellor was correct in adjudging that Eades recover of the Company commissions on the production of two of the salesmen from Nov. 1, 1936, to March 2, 1938, the day their two years' service ex-

pired, and that he recover commissions on the production of the third salesman from Nov. 1, 1936, to Jan. 1, 1938, the date he severed connections with the Company.

The judgment is affirmed.