SAMUEL T. ISAAC & ASSOCIATES, INC., Appellant and Cross-Appellee,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellee and Cross-Appellant.

Court of Appeals of Kentucky.

May 21, 1982.

As Modified July 2, 1982.

Discretionary Review Denied April 13, 1983.

Teresa Ann Isaac, David G. Vest, Bradley, Emerson, Wake & Vest, Lexington, for appellant and cross-appellee.

John A. West, Paul R. Collins, Greenbaum, Doll & McDonald, Lexington, for appellee and cross-appellant.

Before HOWARD, REYNOLDS and WILHOIT, JJ.

HOWARD, Judge.

This is a case in which a mortgage banker appeals from a judgment terminating his contract with the Federal National Mortgage Association, better known as "Fannie Mae." Fannie Mae filed suit in the Fayette Circuit Court seeking a preliminary injunction requiring the mortgage banker (appellant Samuel T. Isaac and Associates, hereinafter referred to as STI) to turn over certain records pertaining to mortgage loans after termination of their contract. Fannie Mae (hereinafter referred to as FNMA), sought return of the servicing rights and other documentation related to certain mortgage loans serviced by STI under the contract. The trial was had before the Honorable George E. Barker.

The trial court entered extensive findings of fact and conclusions of law which in effect upheld the termination of the contract between FNMA and STI. However,

the court ruled that FNMA was a federal instrumentality and that its action in terminating the contract herein was "federal action." This means that FNMA was required to give a due process hearing to the appellant under the federal and state constitutions. In effect, this meant that FNMA's September 22, 1980 termination letter was ineffective alone and that a due process hearing was necessary. However, the court concluded that it had given the due process hearing and therefore decided that the contract was terminated as of the date of the entry of the judgment. STI appeals and urges the following grounds:

1. The trial court exceeded its authority in terminating the contract in issue.

2. The trial court's determination that STI breached the contract was unsupported by substantial evidence and therefore constituted an abuse of discretion.

3. The trial court's denial of STI's right to sell its loan portfolio constituted an abuse of discretion and is unsupported by the pleadings or proof and resulted in an unwarranted forfeiture inconsistent with the court's order, findings and conclusions.

On the other hand, the appellee cross-appeals from that portion of the final judgment which terminated for cause the servicing contract as of April 3, 1981, the date the final judgment was entered, instead of September 22, 1980, the date FNMA gave notice of termination.

Before discussing the foregoing issues, however, we deem it necessary to give the following background information.

The business of STI is to originate mortgage loans and to service such loans. To originate loans STI must solicit, receive, process and evaluate applications for loans, obtain the money, and close the loan, taking a note and mortgage as security. To provide the initial funds for closing, mortgage bankers generally will have lines of credit established with banks known as "warehouse banks." Those warehouse banks provide all or a substantial portion of the mon-

ey to close the loans and take the note and mortgage as collateral in addition to whatever other collateral or security is given to establish the line of credit. Generally, then, the note and mortgage is sold to an investor such as FNMA, GNMA [1] or a private institution mortgage investor on the secondary mortgage market. The procedure generally followed is that the original note and mortgage is taken from the warehouse bank upon a trust receipt which obligates the mortgage banker to repay the warehouse bank loan from the proceeds from the sale of the note and mortgage.

Upon the sale of the note and mortgage, the mortgage banker does receive an origination fee which generally does not completely reimburse the mortgage banker for the cost of origination. The business profit of the mortgage banker, in large part, depends upon its servicing function. Generally an investor purchasing a mortgage will engage the selling mortgage banker to continue to service the mortgage for which a servicing fee is paid. The servicing function encompasses many activities in addition to receiving the monthly mortgage payments and making disbursements of principal and interest to the investor. Many mortgages require the monthly payment of a pro rata portion of taxes and insurances which must be accumulated by the mortgage banker in an escrow account from which annual or semi-annual payments of taxes and insurance premiums are made. The mortgage servicer is also required to monitor all activities which may occur in the investor's mortgage portfolio such as sales, divorces, transfers, casualty losses, insurance claims, delinquencies and foreclosures.

The court found from the evidence that beginning in May, 1979, STI committed a series of substantial and material breaches of its contract with FNMA/GNMA. The President of STI, without the knowledge or consent of anyone, including other officers of STI, began to use the funds of FNMA for private purposes. The court found that such actions were knowing and wilful

---

1. Government National Mortgage Association.

breaches of a fiduciary relationship. The excuse that withdrawals from the clearing account were only of money estimated to be due STI was held to be totally unacceptable.

The evidence revealed that the events which led up to the termination of the contracts began to occur in May, 1979, when the HUD Mortgagee Review Board considered the recommendation of the HUD Chicago area office that the HUD–FHA mortgagee approval of STI be withdrawn due to its handling of a multi-family project mortgage in Pekin, Illinois. It was alleged that Samuel T. Isaac, President of STI, had made a false certification as to a loan commitment and had improperly collected a fee of $151,843.00. On October 16, 1979, the HUD Mortgagee Review Board withdrew STI's mortgagee approval, sometimes referred to as the "eagle", on a temporary basis, the Board having determined that a continuation of mortgagee approval during the period within which STI could request a hearing was not in the public interest. The determination was based on the false certification and a violation of regulations which resulted in a $1,723,700.00 shortfall precluding a final endorsement of the mortgage. The temporary flight of the "eagle" did not affect servicing of existing mortgages. STI requested a hearing and as of this time no decision has been reached as to the reinstatement of permanent disbarment.

On August 8, 1979, Kentucky Housing Corporation, a state agency investor, made an audit of its accounts with STI and, based upon alleged discrepancies, attempted to terminate its contracts with STI. Litigation which followed in the Franklin Circuit Court concluded favorably to STI and STI presently retains its contractual relationship with Kentucky Housing Corporation.

In addition to these problems, HUD performed two audits of STI, one dated January 31, 1980, and the other dated April 10, 1980, which audits reported significant deficiencies, including inappropriate transfer of clearing account and escrow account funds totalling $477,270.14.

Also, a FNMA audit conducted January 28, 1980—February 14, 1980, reported eleven (11) discrepancies, including the unauthorized and improper withdrawal of investor funds for STI's private use from the collection clearing account beginning May, 1979. From time to time corporate funds of STI were deposited in this account to repay the unauthorized withdrawals, but as late as January 22, 1980, the excess of "borrowed" funds over "repayments" was $128,-017.50. This excess was completely repaid by STI in February, 1980, but to avoid possible reoccurrences, FNMA required that use of the collection clearing account by STI be discontinued.

On June 4, 1980, Central Bank and Trust Company, Lexington, filed suit against STI in the Fayette Circuit Court seeking to recover $561,343.00, being the sum total of a number of "warehouse" loans to STI. It was alleged that STI had withdrawn mortgages upon a trust receipt from the bank for sale to investors, including FNMA, and then fraudulently had failed to repay the bank from the proceeds of the sale. This litigation resulted in an agreed judgment against STI, Samuel T. Isaac, and Barbara Ann Isaac, his wife, on December 29, 1980, in the sum of $579,952.09 plus accrued interest. This judgment was paid and satisfied in full on January 26, 1981.

On September 2, 1980, GNMA, for its own account, took steps to remove STI as a servicer of all GNMA mortgage backed security pools and summarily withdrew all funds from the GNMA custodial account maintained by STI. Shortly thereafter several lawsuits were filed by STI against GNMA and others in Fayette Circuit Court to prevent this termination of its servicing function for GNMA. On petition of the defendants these lawsuits were removed to the United States District Court, Eastern District of Kentucky, where they are now pending.

On November 25, 1980, the Teacher's Retirement System of the State of Kentucky filed suit against STI in the Fayette Circuit Court seeking to terminate its seller/servicing contract with STI, alleging,

among other things, the improper investment of $50,000.00 of plaintiff's money in a participation certificate in a project in which STI had an interest and the unauthorized withdrawal of $80,000.00 from a trust fund for the private use of STI. This case had not been heard on its merits but the Fayette Circuit Court had granted a temporary injunction to plaintiff ordering STI to turn over plaintiff's mortgage files and records and to relinquish the servicing of same.

The evidence before the trial court revealed that throughout the Fayette Circuit Court proceedings in this case, an action has been pending in the Circuit Court of Will County, Joliet, Illinois, against STI and others, including the Secretary of HUD and Samuel T. Isaac individually. One of the allegations of plaintiff, Home Savings and Loan Association of Joliet, is that Samuel T. Isaac, President of STI, fraudulently induced plaintiff to advance a loan of $6,629,-000.00 for the construction of a high-rise apartment building in Joliet, known as Salem Village III, by falsely representing to plaintiff that there was a commitment to repay said loan from GNMA. The plaintiff in the Illinois case also alleges a scheme to defraud as evidenced by similar misrepresentations by Isaac to HUD and five banks in Pekin, Illinois. The Will Circuit Court conducted a hearing and made certain findings on November 25, 1980, entered an Order of Preliminary Injunction and Receivership which, among other things, ordered payments on the mortgage in question to be made to the receiver instead of STI and ordered STI to make an accounting and pay certain funds to the receiver. This matter is still pending and no decision has been reached on its merits.

Other matters referred to in the evidence is that the eleven (11) discrepancies were cleared and STI was requested to respond as to the action taken to clear the remaining items which was done by STI in its letter of August 11, 1980. During this time, STI was carried on a FNMA sanction summary report with a performance rating of "inadequate."

One other matter is the failure of appellant to file its annual report on time. The trial court did not give that matter much weight because it appeared that STI and other mortgage banks were continually late with their reports and this was apparently overlooked by FNMA.

The contract between the parties contained a termination clause to the effect that the contract may be terminated at will or pursuant to cause. The trial court found from the evidence that FNMA had sufficient cause to terminate the contract in that the activities of the appellant certainly were not in the public interest, and that STI had breached its contractual obligation to conduct itself in a sound ethical manner by failing to disclose and in attempting to conceal significant changes in its financial condition. The court found that STI breached the contract by paying fees from the custodial account and not the clearing account and that statements for the clearing account were not made available to the investors as were the bank statements for the custodial accounts. This led the court to believe that the withdrawals were made from the clearing account deliberately for the purpose of concealing same. The court found that there were repeated instances of borrowing and improper use of custodial funds by STI and this resulted in an impaired financial condition.

The court further found that STI had failed in its burden to show that it had the contractually required financial stability to continue to service the FNMA and GNMA mortgage portfolio. The court found that the long term/short term debt ratio of STI is not sufficient to justify changing the classification and valuation of assets. The court found that at the time of the judgment the financial condition of STI was such that it would result in immediate and irreparable harm to FNMA/GNMA and the mortgagors of the mortgages in question if STI were permitted to continue to service the portfolio without court supervision and injunction bond.

■ The express termination provisions of the service contract are clearly enforce

able under Kentucky law. *Ford Motor Co. v. Alexander Motor Co.,* 223 Ky. 16, 2 S.W.2d 1031 (1928); *United States v. P & D Coal Mining Co.,* 251 F.Supp. 1005 (W.D.Ky. 1964); *Business Men's Assurance Company of America v. Eades,* 290 Ky. 553, 161 S.W.2d 920 (1942); 9 *Williston on Contracts* § 1017A.

The issues presented by the appellant in regard to authority of the circuit court to enter this judgment are troublesome. On the one hand the circuit judge has found that this was a federal agency involved in federal action in regard to the termination of the contract. If that is so, can he determine the rights of the parties under the state declaratory judgment act as set out in K.R.S. 418.040 or is he merely limited to a review of an administrative board which, in Kentucky, is limited to whether or not the agency acted 1) in excess of granted powers; 2) whether there was a lack of procedural due process; and, 3) whether or not there was a lack of substantial evidence to terminate? It is further complicated by the fact that the trial court found that there was not sufficient evidence to terminate the contract on September 22, 1980.

The appellee claims that FNMA had the right to terminate the contract for cause on September 22, 1980, and that the federal government was not so significantly involved in the action of FNMA in terminating the servicing contracts with Isaac and was not the type of federal action that would require a due process hearing on the administrative level. *Public Utilities Commission v. Pollack,* 343 U.S. 451, 96 L.Ed. 1068, 72 S.Ct. 813 (1952).

■ Is there a sufficiently close "nexus" between the HUD regulation of FNMA and the action of FNMA in terminating the Isaac contracts? If there is no "nexus" there can be no finding of the federal government action which would make the due process clause applicable to FNMA. It is to be noted that the circuit court made a general finding in regard to this as follows: "FNMA's conduct of business is so entwined with government policies that it assumes the character of government action."

■ We conclude that the court's factual findings are supported by the evidence and that its legal conclusions based thereon are correct. Therefore, we cannot disturb the court's findings that federal action was involved, thereby requiring a due process hearing, and that the contract could be terminated for cause. CR 52.01. Also, once the court took jurisdiction of the case it had the authority to provide the parties with a binding declaration of their rights under the servicing contract. K.R.S. 418.065; *Maas v. Maas,* Ky., 305 Ky. 490, 204 S.W.2d 798 (1947). It is well settled in Kentucky that the entire contractual controversy may be determined in a declaratory judgment action. *Absher v. Illinois Central R. Co.,* Ky., 371 S.W.2d 950 (1963); *Warren County Fiscal Court v. Warren County Tuberculosis Sanitorium Corp.,* Ky., 272 S.W.2d 331 (1954).

■ Since the court had jurisdiction, we can see no error in the action the court took in denying STI the right to sell its mortgage portfolio. The court had a duty to protect all the parties to this litigation. We find no abuse of the trial court's discretion.

On the cross-appeal we cannot say that the trial court was erroneous as a matter of law in failing to consider the contract herein terminated as of September 22, 1980, since we have decided that there was federal action involved and a due process hearing was not held.

Therefore, we affirm on the appeal and affirm on the cross-appeal.

All concur.